## JIM PHILLIPS v. THE STATE.

### No. 3169. Decided May 23, 1906.

**1.—Murder in Second Degree—Continuance—First Application.**

Where upon trial for murder the diligence for obtaining the attendance of the absent witnesses was sufficient, the testimony material and the motion for continuance the first application therefor, it was error not to grant the same.

**2.—Same—Dying Declaration—Res Gestae.**

Where upon trial for murder the testimony of the absent witness tended to contradict the State's testimony as to deceased dying declaration, and that the statements of the deceased according to the absent testimony was res gestæ, and also contradicted the testimony of the main State's witness as to his character as an accomplice, it was error to overrule the application for continuance.

**3.—Same—Dying Declaration—Predicate.**

Where upon trial for murder the testimony, for laying the predicate for the introduction of dying declarations, did not show that declarant was then conscious of approaching death, and had abandoned all hope of recovery, such predicate was not sufficient.

**4.—Same—Writen Declaration—Oral Testimony.**

See opinion as to the admission of parol testimony where the deceased had answered written questions concerning the homicide which had been previously prepared, and which written statement had not been signed by declarant.

**5.—Same—Charge of Court—Self-defense—Attack—Apparent Danger.**

Where upon trial for murder there was evidence that the deceased and others had made an attack upon defendant, and thereupon he used a knife and cut de-

ceased, there was no error in the court's charge in referring to the appearance of an attack made by deceased upon defendant, and was not too restrictive in regard to the law of appearances of danger.

**6.—Charge of Court—Limiting Impeaching Evidence.**

See opinion for facts discussed requiring a charge limiting impeaching testimony to the credibility of the witness attacked.

Appeal from the District Court of Bosque. Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Dilliard & Word, Cureton & Cureton,* for appellant.—On question of continuance: Hammond v. State, 28 Texas Crim. App., 413. On question of admitting dying declaration: Wigmore on Evidence, sec. 1438–1441.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty-five years confinement in the penitentiary.

When the case was called for trial application was made to continue on account of the absence of J. B. Phipps and Chas. Sublin. By Sublin it was proposed to prove that he saw deceased, appellant and Berry, just before sundown on the day of the killing, and they were drunk, and seemed to be the best of friends. By Phipps that he was living near Eulogy at the time the killing occurred, and saw defendant and deceased as they passed his house just before dark on the afternoon of the killing, and that State's witness Berry was with them. They were all drunk. They were then going in the direction of deceased's home. In about an hour deceased came running back to his (Phipps') house and said that some one had cut him; and this witness would further testify that deceased was still drunk and had a quart bottle with alcohol in it. Deceased stated, when he first reached his (witness') house, that he could not think of any reason why Berry or Phillips either should have cut him; and said there was not a word said at the time; and further stated that there was not any hard feelings between any of them. This witness (Phipps) would further have testified that he asked Simmons (deceased) if either Berry or Phillips (appellant) knew that he (Simmons) had any money with him; and Simmons replied that Berry may have known it, but that appellant did not know anything about it. This is the first application. The diligence seems to be sufficient. This being the first application the diligence is not so strictly construed as with subsequent applications. This was very important testimony from several standpoints. Berry, appellant and deceased had been together a great deal

during the afternoon, and Berry and Simmons had each purchased a quart of alcohol—Simmons going to the town of Morgan to secure it, they living in a prohibition district. Berry was the main State's witness, and was the only eye-witness to the tragedy. His testimony was very damaging to appellant, and excluded the idea that he (Berry) had anything to do with the homicide except as a witness, and that after appellant had stabbed Simmons, he made an assault on Berry.

The court admitted, over the objection of appellant, what purports to be the dying declaration of Simmons, which is directly in conflict with the statements proposed to be shown by the absent witness Phipps. It is a conceded fact that Simmons did return to the residence of Phipps hurriedly, and was taken into the residence of Phipps. It is a further fact that deceased died at Phipps' residence. The difficulty occurred about one-fourth of a mile from Phipps' residence. It is also a fact that immediately after receiving his wounds, Simmons went to the residence of Phipps, and his statements were made to Phipps immediately upon his arrival. This testimony becomes important from two standpoints; first, it is res gestæ; and second, it contradicts what purports to be the dying statements of the deceased. It has been a well-settled rule in Texas at least since Felder v. State, 23 Texas Crim. App., 477, that a dying declaration introduced in evidence can be contradicted by evidence of other statements of the declarant made in regard to the same matter. This testimony is also important for a third reason. Berry entirely exonerated himself from any participancy in the transaction, except as defending himself against the attack of appellant; and this testimony has a tendency at least to indicate that, in the mind of Simmons, at the time he made the res gestæ statement to Phipps, that he did not know but thought Berry made the attack on him. There are other cogent reasons that might be assigned why this testimony is important, but these are certainly enough to show the relevancy and cogency of Phipps' testimony. The continuance should have been granted.

Exception was reserved in the statement of facts to the admission of the dying declaration of the deceased, which, as presented, we think should have been sustained. See Long v. State, 88 S. W. Rep., 205; Craven v. State, 90 S. W. Rep., 311; Wilson v. State, 90 S. W. Rep., 314; Ex parte Meyers, 33 Texas Crim. Rep., 217. The predicate, as viewed from the standpoint of the bill of exceptions was not sufficient. The strength of the predicate is found in the statement of the witness Schenck. His statement makes it appear that Dr. Miller who accompanied him to the bedside of deceased, where they went for the purpose of obtaining a dying statement, asked declarant if he did not recognize that he was in a critical condition. To which declarant assented. This is as strong we believe as the predicate can be stated from the facts. While there is some intimation from this witness Schenck in answer to the question he asked declarant, that declarant understood he might be making this as his last statement, but as

we understand this testimony there is nothing in it indicating that he was then conscious of approaching death. Nor is there anything that sufficiently eliminates the idea that all hope of recovery was absent from his mind. Therefore, we do not think there was sufficient predicate under the authorities cited.

It may be seriously questioned if this statement was admissible for another reason. Witness Schenck anticipating perhaps that the declarant would die, from what Dr. Miller had informed him, prepared in his office or storehouse a lot of questions that he (Schenck) desired to be answered by Simmons. Armed with these, and accompanied by Drs. Miller and Spears, they repaired to Phipps' residence, and asked the prepared questions of the declarant seriatim and received replies to each question and wrote them down. Schenck held some official position and swears positively that deceased assented to them after he had so written them, and that he did not want to change any statement. The bill of exceptions shows that at the time the witness was testifying this written document was before the court, and was even used by the witness to refresh his memory to some extent. It is urged that this was the better testimony because it had been written down and assented to by the declarant. We believe this position is well taken. Mr. Wharton says: "If the declaration of the deceased at the time of his making it, be reduced to writing, the written document must be given in evidence, and no parol testimony respecting its contents can be admitted. It has been held in England; that if a declaration in articulo mortis be taken down in writing and signed by the party making it, the judge will neither receive a copy of the paper in evidence, nor will he receive parol evidence of a declaration which is not itself produced, when its production is possible. But where the dying person repeats his declaration three several times in the course of the same day, the fact of its having been committed to writing in the presence of the magistrate on the second occasion, will not, it seems, exclude parol evidence of the others, where it is not in the power of the prosecutor to give that which has been committed to writing, in evidence." Wharton on Homicide, sec. 766; Greenleaf on Ev., 161; Krebs v. State, 8 Texas Crim. App., 1. In Long v. State, 88 S. W. Rep., 203, it was further said: "The State was not seeking to introduce the statements or contents of the written declaration. It was another statement made by him to a witness other than the justice of the peace. If as a matter of fact, the State was seeking to introduce the contents of the written declaration, its loss not being accounted for, the objection would be well taken." While this declaration was not signed by the declarant so far as this record shows, though this is left in doubt, yet it is made positively to appear by Schenck that he read the entire statement over to declarant, and declarant adopted it as a correct statement, and that he did not wish to change it. This written statement was in court, and gave the exact expressions of the declarant under Schenck's testimony. If declarant

had signed the document this question would have been absolutely at rest, and it would have been necessary to introduce it. If he did not sign it, it seems from the authorities it was not necessary to introduce the written statement, that oral testimony was sufficient. 4 Ency. of Ev., p. 990, and notes.

There is some criticism of the court's charge on self-defense, in that he instructed the jury in reference to the appearance of an attack made by deceased upon appellant; and that it is too restrictive in regard to the law of appearances of danger. As we understand this record, the testimony shows that the danger relied upon was real. Appellant testified that he had been drunk, and took morphine as well, and that when in that condition his mind became vacant, and he was lying down asleep under those conditions and was awakened by the fact that Berry and deceased were kicking him in the side, and that he immediately defended himself with his knife. Berry testified that the three were walking along together, and he was carrying one bottle of alcohol and deceased another, and appellant was carrying an express bundle of some sort received that day by Simmons, and they were going to Simmons' residence, and that appellant fell down evidently in a comatose condition, and they could not arouse or awaken him, and they went away a few steps, and appellant got up directly and followed down where they were and made the attack on them. We believe under the facts of this case, the court was justified in giving the charge on self-defense as submitted. If these parties had made an attack on appellant, as he states, and were kicking and mistreating him in his helpless condition, and being aroused from that he used his knife, it would be in defense of an actual attack and not of apparent danger.

There are some criticisms of the court's charge on impeaching evidence introduced to contradict the witness Berry. Berry was the important witness for the State. Shortly after the occurrence he was in the little village of Eulogy, near the outskirts of which this difficulty occurred, and stated to one witness that he did not know anything about how the transaction occurred, and to another that "he did not know a damn thing about it." The charge is not as carefully drawn in this respect as it should have been, and upon another trial the court should charge the jury that this testimony should be limited to the credibility of the witness attacked (Berry) and the weight to be given his testimony.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.