## Abraham Ortiz v. State.

### No. 2054.  Decided December 11, 1912.

#### 1.—Murder—Postponement—Severance.

Where defendant's codefendant was also charged with the same offense, there was no error in overruling a motion to postpone defendant's case until his said codefendant was apprehended and placed on trial, as such severance involved the continuance of defendant's case and should not have been granted under the Statute.

#### 2.—Same—Evidence—Bills of Exception.

Where the bill of exceptions included a number of statements, some of which were clearly admissible in evidence, and there was nothing in the objection directly pointing out the supposed objectionable portions of the testimony, the same cannot be considered on appeal.

#### 3.—Same—Bill of Exceptions—Rule Stated.

Where evidence was introduced over objection, some of which is admissible and some of which might not be admissible, it is the duty of the party objecting to specify in the bill the particular portion of the testimony to which objection is urged.

#### 4.—Same—General Objections—General Demurrer.

General objections to the admission of testimony are in the nature of general demurrers, and will not be sufficient if the testimony admitted was admissible for any purpose in the case.

#### 5.—Same—Evidence—Arrest—Warning—Fruits of Crime—Confession.

Where, upon trial of murder, the body of the deceased was found by the statements of the defendant while he was under arrest, there was no error in admitting such declarations or confessions of the defendant, and the rule of written confessions will not apply.

#### 6.—Same—Evidence—Fruits of Crime—Confessions.

Where, upon trial of murder, the defendant's statement with reference to the whereabouts of a certain watch which had been taken by him from the body of the deceased led to the discovery of said watch, there was no error in admitting said confessions in evidence although defendant was under arrest at the time and not warned.

#### 7.—Same—Bills of Exceptions—Rule Stated.

A bill of exceptions should be made so full and certain in its statement as that in and of itself it will disclose all that is necessary to manifest the supposed error.  Following McGlasson v. State, 38 Texas Crim. Rep., 351, and other cases.

#### 8.—Same—Legal Presumption—Practice on Appeal.

The legal presumption is that the ruling of the trial court is correct unless the bill of exceptions shows otherwise.  Following Moore v. State, 7 Texas Crim. App., 14, and other cases.

#### 9.—Same—Rule Stated—Practice on Appeal.

It is a rule that the Appellate Court will not consider grounds of objection not stated, and the bill must be clear, and sufficiently manifest the alleged error.

Appeal from the District Court of Hidalgo.  Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane*, Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is a murder conviction with the death penalty assessed.

In brief, the evidence discloses that the deceased with his wife, the latter being the main State's witness in the case, had returned from Reynosa, a little village on the Mexican side of the Rio Grande, into Texas and that appellant and Domingo Gonzales, while they were traveling along the road, made an attack on her husband with a club and killed him, crushing his skull. They then took her a short distance from the road and each in turn forced her to have carnal intercourse with them. This they repeated more than once. It is also shown that they took money from the pockets of her husband. While one of them would have intercourse with her, the other would stand by the dead body and watch it. Then the other would have intercourse with her, while the other party would return to the body. After they had finished these matters, which occupied two or more hours, they started to leave her. After going a short distance they held a conversation not heard by the witness, when Domingo Gonzales returned to where she was and forced her to go with him to the residence of another Mexican whom the witness called Ysidro. Ysidro was brother-in-law to appellant. Witness spent the night and the next day at the residence of Ysidro with Domingo Gonzales, as she testifies, under compulsion and for fear of her life. Late the next evening Domingo Gonzales went away to get some groceries. When this occurred she made her escape and informed the justice of the peace of these matters, whereupon followed an investigation of the whole transaction, the subsequent arrest of appellant, and his trial and conviction. Domingo Gonzales fled the country. The indication from this record is that he is still a fugitive from justice, never having been arrested. There is quite a lot of other testimony, but we are of opinion that this is a sufficient statement of the matters to bring in review the questions raised, except as they may be referred to in discussing the bills of exception.

The first bill of exceptions relates to the motion made by appellant to have his case continued until Domingo Gonzales is apprehended and placed on trial. He was charged also with this offense, and is now at large, not in custody of the authorities, and was so absent without any fault or collusion on the part of the defendant. Wherefore, he moves this case be postponed and continued as a matter of law until such time as Gonzales can be apprehended and placed on trial, or until such time as they may have an opportunity to agree upon the severance of the case. Domingo Gonzales was under indictment for this murder also as appellant charges in this motion. There is no merit in this motion, and the court correctly overruled

it. The statute provides that the case shall not be continued in order
to obtain the severance, and where a severance involves a continuance
as a reule the severance will not be granted. Whatever exception
in matters of continuance might grow out of this statute in favor of
accused parties in order to have a fair trial is not necessary here
to discuss. The statute clearly did not intend to operate in a case
like this.

The second bill of exceptions is very lengthy and sets out at length
in questions and answers much of the testimony of the widow of the
deceased. A great deal of this testimony was clearly legitimate, and
some of it may or may not be objectionable owing to the purpose for
which it was introduced, or for what it was to be used, or the connec-
tion in which it came. The objections are general and stated as fol-
lows: ''Because the said questions and each of them sought to elicit
testimony which is incompetent, immaterial and irrelevant, and cal-
culated to inflame the minds of the jurors, and prejudice them against
the defendant, and to each and all of which answers to said questions
the defendant objected because all the said answers and each of them
to said questions are incompetent, immaterial and irrelevant, and
calculated to inflame the minds of the jurors and prejudice them
against this defendant.'' A bill of exceptions is too general for con-
sideration if it includes a number of statements, some of which are
clearly admissible, and there is nothing in the objection directly point-
ing out the supposed objectionable portions of the evidence. Branch's
Crim. Law, Sec. 47; Payton v. State, 35 Texas Crim. Rep., 508; Tubb
v. State, 55 Texas Crim. Rep., 706; Cabral v. State, 57 Tex. Crim.
Rep., 304, 122 S. W. Rep., 872. Where evidence is introduced over
objection, some of which is admissible and some of which is on doubt-
ful grounds or which might be objectionable, it is the duty of the
objector to specify in the bill the particular portion to which objec-
tion is urged. General objections of the character set out here are
not usually sufficient. They are in the nature of a general demurrer.
It has heretofore been stated in the decisions and may be restated that
general objections to the admission of evidence are in the nature of
general demurrers, and will not be sufficient if the testimony admitted
was admissible for any purpose in the case. If the testimony in this
bill could be admissible for any purpose, then the objections are too
general to be entertained. This rule is well recognized by the authori-
ties, and it has been frequently so held. An inspection of the bill in
connection with all the testimony contained therein does not manifest
by any means that any of the testimony was inadmissible. Some of
it was clearly admissible. As to whether or not some of the other
would be admissible would depend upon circumstances, and an inspec-
tion of the entire statement of facts, were we permitted to go to that
instrument, would indicate that all of it was admissible, but in the way
the bill is presented we deem it unnecessary to discuss the question.

There is another bill of exceptions which recites that while the wit-

ness, Dionicio Lerma, was on the stand testifying in behalf of the State he was asked the following questions and made the replies thereto as follows: "Q. The defendant took you out there? A. Yes, sir. Q. What did he take you there for,—why was he taking you there. A. Yes, we told him (asked him) where he took the body and he said he would take us. Mr. Dougherty: We object to this testimony as the defendant was then under arrest and it is inadmissible on the grounds that an admission made by the defendant while under arrest, without having been warned as to the consequences is not admissible. The Court: This is an exception to the rule, Doctor, it is admissible. Mr. Dougherty: We take an exception. And the court overruled said objections and admitted said testimony."

This bill does not state, as a matter of fact, that appellant was under arrest at the time, but we may infer from the statement in the bill that he was, and that this statement was made while he was under arrest. There is nothing to indicate that he was not warned, but we suppose he was not warned, and it may be granted that the statements were not in writing as required by the statute. The court says this is an exception to the rule, and it is admissible. Conceding all these things, we are unable to see where error is shown. If it was intended to urge that the defendant was under arrest and took the parties to the body, or defendant said he would take them to the body, it might be clearly admissible if by these means they discovered where the dead body was. This bill does not exclude that idea by any means. The expression or answer of the witness, "Yes, we told him (asked him) where he took the body and he said he would take us." This bill does not show the body had been previously found or that by reason of what the defendant did they had discovered things that they had not otherwise, which indicated defendant's guilty participancy in the killing. It is an exception in the statute which authorizes the confession to be taken in writing after due warning, etc., if confession led to discovery of fruits of the crime. That phase of the statute does not apply if by reason of the confession, warned or unwarned, or statements of the accused, although under arrest, lead to discovering the fruits of the crime, etc. The bill does not exclude that idea, and rather tends to show that the purpose was to take them to the body. It does not even show that he went to the body with them and pointed it out. It only conveys the idea that he would do so. But we take it, that in view of the entire bill as it is presented, which seems to be rather confused, that the defendant, however, did take the parties to the body of the deceased. This is shown by the following questions and answers: "The defendant took you out there? A. Yes, sir. Q. What did he take you there for, why was he taking you there? A. Yes, we told him (asked him) where he took the body and he said he would take us." So it seems he did take them to the dead body, and if by reason of that fact they discovered the body, and that it was in fact killed, or came to its death by violence, or at the hands of some person other

than himself, this would be admissible testimony, although he was under arrest and unwarned.

Another bill recites that while Mr. William Brewster was testifying for the State he was permitted to testify that appellant made a statement to him in regard to a watch that he had taken off the dead man. Objection was urged to this because appellant was under arrest. He was further asked if he, witness, knew at any time where the watch was. This was answered in the negative, and the following question was asked: "And were you by reason of the statement made to you enabled to discover that watch, and did you discover it in pursuance of his admission to you?" This was answered in the affirmative. "Mr. Dougherty: We take exception. The Court: Let him answer the question. Q. Well, what did he say to you in regard to the watch?" Then follows quite a lengthy answer, the substance of which is about eight days before this witness was testifying defendant told the witness that the watch was at his house and to go to his sister-in-law's or brother-in-law's or his little boy and tell them to give him, Brewster, the watch; that they knew where it was, and Brewster went and they informed him the watch was not there, that it had been taken to Reynosa, Mexico, by appellant's boy, and he said that the watch was at his grandmother's, who was defendant's mother-in-law. Witness then went there and talked to the old lady, and finally she dug up the watch, she had it buried in a corner of the house. The Court overruled appellant's objection above stated and admitted this testimony. The objection urged was that the admission was made while defendant was under arrest. The statute expressly provides, as we understand it, that where defendant is under arrest and makes statements which lead to the discovery of the fruits of the crime, etc., that they can be used, although the party was under arrest and unwarned and the admission or confession not reduced to writing. The evidence discloses, as we understand it, that deceased had a watch at the time of the homicide. By this bill appellant admitted having this watch and told the officers where they could find it. After going to the place designated the parties whom he pointed out as having charge of the watch, or who would deliver the watch to the officer, informed him the son of appellant had carried it to his grandmother's, mother-in-law of appellant, across the river, a little village known as Reynosa. There they found the watch. Under this state of case and under these facts we are of opinion that the court correctly admitted this evidence. The bill shows on its face that the officers knew nothing of the whereabouts of the watch until appellant disclosed its whereabouts. There was no error in the ruling of the court.

There is one other proposition we wish to state generally in regard to these bills of exception; that is this: that the bill of exceptions should be made so full and certain in its statements as that in and of itself it will disclose all that is necessary to manifest the supposed error. McGlasson v. State, 38 Texas Crim. Rep., 351, Walker v. State, 9 Texas

Crim. App., 200; Elridge v. State, 12 Texas Crim. App., 208; Davis
v. State, 14 Texas Crim. App., 645; Wilkerson v. State, 31 Texas Crim.
Rep., 86; Carter v. State, 40 Texas Crim. Rep., 225; Hooper v. State,
29 Texas Crim. App., 614; Flannigan v. State, 51 S. W. Rep., 1116;
Coffey v. State, 60 Tex. Crim. Rep., 73, 131 S. W. Rep., 216; Green v.
State, 60 Tex. Crim. Rep., 530, 132 S. W. Rep., 806; Spencer v. State,
61 Tex. Crim. Rep., 60, 133 S. W. Rep., 1049; Branch's Crim. Law,
Sec. 45.

There is another proposition which is germane to the above; it is
this: Legal presumption is that the ruling of the trial court is correct
unless the bill shows otherwise. Edgar v. State, 127 S. W. Rep., 1053;
Moore v. State, 7 Texas Crim. App., 20. In stating these rules it would
be advisable also to say that in order to have the matters contained in
the bill of exception reviewed, the statements must be sufficiently
clear to manifest to this court the question at issue, and its alleged
prejudicial effect. The writer is of the opinion that if the bill is suf-
ficiently clear and explicit to manifest to this court the error com-
plained of, then this court should entertain and rule upon the sup-
posed error. Of course, the bill must be clear and sufficiently so to
manifest this error, and the grounds urged against the rulings of the
court in the admission or rejection of testimony must be stated. It
is a rule that the appellate courts will not consider  grounds of ob-
jection not stated. It is not my purpose here to enter into any dis-
cussion with reference to the sufficiency of the bills of exception or
the statements of the grounds of objection, but the above rules are
stated in a general way. The whole end and object and purpose of the
trial of an accused person is to see that he gets a full, fair and legal
trial, and if he is dissatisfied with the rulings of the court, he must
show in some legitimate way that the rulings of the court are erroneous,
sufficiently so to overcome the legal presumption of the correctness of
the decision or rulings of the trial court. The law lays down no par-
ticular form of bills or manner of presenting these questions except
that they must be sufficient to overcome the legal presumption of the
correctness of the rulings of the trial court and sufficiently clear for
this court to understand the error of which complaint is made.

We are of opinion after a careful review of this record and the bills
as presented, that it has not been made to appear that the rulings of
the trial court were erroneous.

Finding no such error in the record as in our judgment requires a
reversal it is affirmed.

*Affirmed.*