BONDY FRANCIS v. THE STATE.

No. 3264.        Decided October 28, 1914.

Rehearing denied November 25, 1914.

**1.—Murder—Charge of Court—Murder in First Degree.**

Where defendant was found guilty of murder in the second degree, a complaint to the charge on murder in the first degree need not be considered. Following Potts v. State, 56 Texas Crim. Rep., 39.

**2.—Same—Negligence and Gross Mistreatment.**

Where, upon trial of murder, the evidence did not raise the issue whether deceased's death was caused by negligence and gross mistreatment after he was shot, there was no error in the court's failure to charge thereon.

**3.—Same—Assault to Murder—Aggravated Assault—Charge of Court—
   Manslaughter.**

Where the issues of assault to murder, aggravated assault and man-
slaughter were not raised by the evidence, there. was no error in the court's
failure to charge thereon. Following Johnson v. State, 167 S. W. Rep., 733.

**4.—Same—Supplemental Motion for New Trial—Practice on Appeal.**

Where defendant's motion for new trial was overruled and he gave notice
of appeal, and after court adjourned for the term, filed a so-called supple-
mental motion for new trial, the same could not be considered by the lower
court or by this court. Following Tores v. State, 166 S. W. Rep., 523.

**5.—Same—Evidence—Res Gestae.**

Where, upon trial of murder, the declarations of deceased were admitted
to the effect that he wanted to see his poor little children, that he was shot
by the defendant, and the defendant objected in a general way to this testi-
mony, part of which was admissible and another. part was not, there was no
reversible error. Following Ortiz v. State, 68 Texas Crim. Rep., 524.

**6.—Same—Evidence—Dying Declarations.**

Where the alleged dying declarations were admitted upon a proper predi-
cate, there was no reversible error.

**7.—Same—Conversation—Cross-examination—Ill-Will.**

Where, upon trial of murder, part of the conversation was admitted in
evidence, there was no error on cross-examination by the State in permitting
it to bring out the remainder of the statement made by the deceased to the
witness; besides, the same showed ill-will by the defendant towards the deceased.

**8.—Same—Evidence—Dying Declarations.**

Where part of the statement of the wife of the deceased was simply in-
troductory and led up to the main dying declaration of the deceased, which was
admissible in evidence, and defendant was found guilty of the lowest offense
on the charge of murder and his punishment assessed at the lowest penalty
fixed by law, there was no reversible error.

**9.—Same—Evidence—Written Statement by Deceased.**

Where, upon trial of murder, the evidence showed that it was a fair in-
ference from the facts in evidence that when the written statement of the de-
ceased admitted as his dying declarations was made, the required conditions ex-
isted, there was no error.

**10.—Same—Evidence—Irrelevant Matter.**

Where, upon trial of murder, the court ruled out testimony that deceased
did not have very much regard and consideration for defendant, etc., there
was no reversible error.

Appeal from the District Court of Guadalupe. Tried below before
the Hon. M. Kennon.

Appeal from a conviction of murder in the second degree under old
law; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Greenwood & Short,* for appellant.—On question of cause of death
and maltreatment: Morgan v. State, 16 Texas Crim. App., 593.

On question of dying declarations: Drake v. State, 25 Texas Crim.
App., 293; Irby v. State, 25 id., 203; Miller v. State, 27 id., 63; Snell

v.·State, 29 id., 236; White v. State, 30 id., 652; Ex parte Meyers, 26 S. W. Rep., 196.

On question of admitting written statement of deceased as dying declaration: Drake v. State, 25 Texas Crim. App., 293.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was indicted ˙for the murder of his brother-in-law, Sam Cunningham, alleged to have occurred June 19, 1913, before the new murder statute, doing away with the degrees, went into effect. He was tried under the old law and the court submitted both degrees of murder. The jury found him guilty of murder in the second degree and assessed his punishment at five years in the penitentiary,—the lowest prescribed by law.

No extended statement of the evidence is necessary. The evidence, in brief, established that appellant married deceased's sister. Deceased's home was in San Antonio and appellant's in Guadalupe County at the time of the killing; that prior to the killing there had been trouble between appellant and deceased sufficient, at least, to show ill-will· by appellant towards deceased. A few days before the killing deceased went from his home and was staying at a friend's, a few miles from appellant's, for a few days. On June 19, appellant had a dinner and celebration at his house. Deceased, it seems, attended this, probably without an invitation. As is customary by negroes on such occasions they had intoxicating liquors to drink and it seems all of them partook, more or less. After the dinner trouble again arose between appellant and deceased, and it seems it was about the old scores between them. Deceased thereupon left appellant's to go to another picnic or celebration in the neighborhood, or the friend's where he had been staying, a few miles distant. He was walking, and in his shirt-sleeves. When the row started between them at appellant's house, friends separated them,—some taking deceased out in the yard, others taking appellant into his house. It was then deceased left. Appellant, after remaining in his house for a while, privately got his six-shooter, which was loaded, stuck it in his clothes so as to conceal it, went out to his lot, got the horse of another, mounted it and claimed to those present that he was going to a certain pasture to get another horse. He says he so told the parties in order to throw them off of their guard so that they would not prevent him from going to see deceased, which was his intention and which he at once did. He says he went to see him to try to compromise the matter between them. Appellant, on his horse, followed deceased and overtook him in the road not a great ways from appellant's· home. Appellant claims that when he overtook him he told deceased he wanted to compromise their troubles and settle the matter; that deceased declined this and instead said he was going to kill him, got out his small pocketknife, started towards him with it open, and when he got within about three steps from him, he shot him with his pistol, in self-defense, deceased falling; that he then turned and left the

scene on his horse. By a dying declaration deceased said that when appellant overtook him, appellant told him that he was going to kill him unless he took back what he had said; that he declined to retract and thereupon, without his doing anything towards appellant, appellant shot him, from which wound he died within two days; that deceased was wholly unarmed, and, as he expressed it, did not even have a pin with which to stick appellant. The doctor who attended him swore that deceased was shot through the back of the flesh of the left arm about midway between the elbow and shoulder; that the ball entered the side of the deceased, passed through his ribs, liver, lungs, and intestines, and the ball lodged near the right hip or in it; that the wound was necessarily fatal.

Appellant complains that the court erred in submitting murder in the first degree, claiming the evidence did not raise that issue. The jury found appellant guilty of murder in the second degree, assessing the lowest penalty. This presents no error as has all the time been held. Potts v. State, 56 Texas Crim. Rep., 39.

He also claims that the court should have submitted to the jury whether deceased's death was caused by negligence and gross mistreatment, after he was shot, and he asked charges on that subject. The court correctly held that the evidence did not raise the issue to require the submission of such an issue.

The evidence shows without contradiction, that when appellant shot him down he rode away without giving or offering any assistance. That very soon deceased met two friends in a conveyance, and asked them to get a doctor. One at once went for a doctor; the other put him in the conveyance and took him to his nearest friend. The one who went for a doctor said there was none at one town, and one was absent from the other town some six miles distant, and the other refused to go. This was late in the evening. That night they took him to the train some six miles to take him to San Antonio, which they did next day, and called a doctor when they got there. The doctor swore the shot was necessarily fatal.

He further excepted to the charge, claiming that the court ought to have submitted the issue of an assault with intent to murder, claiming the evidence raised that issue. Deceased was killed,—not merely shot from which he recovered,—so that the issue of an assault with intent to murder did not arise and in no event should have been submitted. He also claimed that the court should have submitted aggravated assault. No such issue was raised by the evidence and the court should not have submitted it. Appellant's defense was self-defense, which was fully and completely submitted in his favor by the court and found against him by the jury, to which there is no complaint.

He also complained that the court should have submitted manslaughter. In our opinion the evidence did not raise manslaughter and the court should not, as he did not, submit that issue. There was no adequate cause. Johnson v. State, 74 Texas Crim. Rep., 179, 167 S. W. Rep., 736, and cases cited.

The term of court at which this case was tried adjourned on May 21, 1914. Several days afterward appellant filed what he calls his supplemental motion for a new trial, in which he sought a new trial for claimed newly discovered evidence. The court had no power or authority to consider it for any purpose and neither has this court. It should not have been contained in the record. . During the term, at which the motion filed and acted upon during term time was overruled, appellant gave notice of appeal, which was properly entered of record. After the court adjourned for the term it was without power or authority to hear any other motion for new trial and make any order. If such order had been made, granting such motion, it would have been void. Tores v. State, 74 Texas Crim. Rep., 37, 166 S. W. Rep., 523.

Appellant complains by a bill that "the witness Robert Jefferson testified that he met the deceased walking down the road and that the said Cunningham said to him: 'I want to see my poor little children, I am shot.' He said that Bondy shot him." Then the bill shows that he objected to this testimony for various reasons. The court does not approve any of appellant's objections as statements of facts, but in allowing the bill he says he did so "with this statement: The testimony was admitted as res gestae." By his bill appellant objected to the introduction of the whole of the testimony of the witness quoted above. If he had objected to this much of the statement only, "I want to see my poor little children," it would have been proper for the court to have excluded that much of it, but all of the other which was objected to, being res gestae, was clearly admissible. When part of the testimony is admissible and another part is not, and objection is made to the whole, the court properly overruled such objection. Ortiz v. State, 68 Texas Crim. Rep., 524, 151 S. W. Rep., 1056, and cases there cited.

In another bill it is shown that the witness Manuel Givens testified to what the deceased told him, as follows: "He told me that Bondy Francis shot him. He said he overtook him about a mile from New Berlin, and I asked him, 'Why, Sam, did he shoot you, what did he shoot you for?' and he said, 'He didn't shoot me for nothing,' he said, 'Some old mess,' he didn't tell me which or what, he said, 'About some old mess.' He said, 'We got into a little fuss down at the house and Mr. Francis brought up this old mess, and I told him if he was going to bring up that old mess I would leave the house. After I got up the road a piece,' he said, he heard somebody loping and he said he saw Mr. Francis coming, and he told him, 'Bondy, you have come to kill me and I ain't got nothing, not even as much as a pin to stick in you.' And he said, 'Yes, I come to kill you, if you don't take back what you said I am going to kill you.' He said, 'I don't see any use taking it back, I have done said it, and I ain't got as much as a pin to stick in you.' And he said he just pulled out the gun and shot him." Then follows appellant's objections to this testimony, claiming that it was hearsay, not a dying declaration, etc. The bill in no way discloses anything else with reference to the status of the case or the evidence therein. The court, in approving the bill, did so with this qualifica-

tion: "With the statement that the predicate was laid by showing by the witness that at the time of the statement by deceased, he was conscious of approaching death and was of sound mind. This bill does not set out the preliminary questions and answers of the witness." If we could go to the record for a full statement it would show that the deceased fully realized from the time he was shot that it would kill him and that there was no hope of his recovery. He, in effect, so stated every time the question came up. Also that he was perfectly conscious, at himself in every way. In other words, the record would show that the several statements testified to by several witnesses was shown to be made under such circumstances as clearly to show that they were proven up as dying declarations. It is unnecessary to take up the other bills relating to the testimony of the several witnesses to the same effect. C. C. P., 808, and decisions thereunder.

By another bill he claims that in his cross-examination of Givens, one of the State's witnesses, he drew out that the deceased, the day before the killing had told him that he had "cussed" out appellant in San Antonio. He stopped when he proved that. When the State took him back on redirect examination, he complains, that he said the occasion for his "cussing" out appellant was that appellant brought some ladies to his house and that he told him to leave with them. He did not tell who the ladies were, but that it was not appellant's wife. This testimony was admissible as proper cross-examination, bringing out the remainder of a statement made by the deceased to the witness as a part thereof. C. C. P., 811, and decisions thereunder. Besides, this evidence was admissible to show a cause for ill-will by appellant towards deceased.

By another very meager bill appellant complains that when deceased's wife came home late in the evening and found her husband shot that she spoke to him, asked him how he felt, and he said, bad; that he reached up, put his arms around her, pressed her to him and kissed her until she was taken away. The court, in allowing this bill, states that he does so "with the statement that the bill contains only a part of the testimony of the witness as to what occurred, and is merely introductory to her testimony laying the predicate for the introduction of the dying declaration of the deceased." As stated by the judge, this bill is too meager to require consideration. We think the testimony was inadmissible, but it in no way tended to prove the crime, nor any other material matter. The only way it could have affected appellant, if at all, might have been to inflame the minds of the jury and cause them to inflict a greater punishment upon appellant, but he was found guilty of the lowest offense and his punishment assessed at the lowest fixed by law. So that it did not injuriously affect defendant and presents no error, even if it could be considered.

The next bill shows that the State proved up by deceased's wife his dying declarations just after and as a part of what was shown in the bill just above discussed. In our opinion the bill shows sufficiently and completely all the conditions necessary to be proven to show that

the statement was made under the circumstances and as required by the statute to make it admissible as a dying statement. It is unnecessary to copy the bill as it is lengthy. C. C. P., art. 808.

In the next succeeding bill it was shown that just after the deceased died his wife found a written statement in deceased's pocket, which she testified was written and signed by the deceased. This was admitted also as a dying declaration over appellant's objection that it was not proven up sufficiently to show that it was the dying declaration of the deceased. The court, in approving the bill, did so with this qualification: "The paper was admitted as the dying declaration of deceased. It is not necessary that the predicate for admission of a dying declaration be established by direct evidence—it may be established by circumstances. It is shown by other proof that a very short time after the shooting the deceased was conscious of approaching death, and made a voluntary statement as to how the shooting occurred, and that when he made the statement he was in his right mind. By the testimony of his wife it is shown that he made a like statement, under like circumstances, after he reached San Antonio and just before his death. The circumstances show, with reasonable certainty, that the writing was made by the deceased between the time of his first dying declaration and the last, made to his wife. These declarations were made when he was in his right mind, were made voluntarily, and were made while he was conscious of approaching death. It is a fair inference that, when the writing was made, the required conditions existed." There was no error in the court's ruling.

The only other question raised is by appellant's last bill wherein he complains that the court would not permit appellant to testify that deceased did not have very much regard and consideration for his children, because just a week or two before the killing deceased was at his house and made said children get up out of the bed at 12 o'clock at night and sleep out on the ground, and because one of them did not get up as soon as spoken to, deceased kicked said child and he, appellant, protested against the mistreatment of said children and that the deceased remarked that the children were his and that he could do as he pleased with them. This evidence was inadmissible and the court committed no error in excluding it.

We have carefully considered the record and all of appellant's complaints and none of them present reversible error. The judgment is, therefore, affirmed.

*Affirmed.*

[Rehearing denied November 25, 1914.—Reporter.]