## WM. R. WALLACE v. THE STATE.

### No. 4832.  Decided January 23, 1918.

**1.—Murder—Principals—Charge of Court.**

Where, upon trial of murder, the evidence did not suggest the idea of conspiracy, nor that defendant aided or acted with others under circumstances which would render him responsible for their acts, or that of either of them in killing the deceased, and that the same was an independent act of another, and not one for which the defendant would be responsible as a principal, it was reversible error to submit a charge on the law of principals.

**2.—Same—Evidence—Res Gestae—Conversation.**

Upon trial of murder the court should not have admitted in evidence the conversations between deceased and his father some time after the difficulty; they were not res gestae and were so disconnected from the main transaction that the elements of res gestae were wanting. Following Deneaner v. State, 58 Texas Crim. Rep., 624.

**3.—Same—Dying Declarations—Evidence—Predicate.**

Where, upon trial of murder, the record on appeal disclosed the absence of any legal predicate for the admission in evidence of the conversation with the deceased after he had reached his home upon the theory that they were dying declarations, they should not have been admitted in evidence. Following Phillips v. State, 50 Texas Crim. Rep., 127, and other cases.

**4.—Same—Evidence—Declarations and Acts of Third Parties.**

Upon trial of murder the testimony of the father of the deceased as to the details of his business transactions with the father of the defendant, should not have been admitted in evidence, nor other minor facts, which had no connection with the homicide.

**5.—Same—Impeaching Witness—Moral Turpitude.**

Where defendant's witness was discredited by proof of an indictment for perjury, he should have been allowed to explain that he was not guilty of such charge. Following Cowart v. State, 71 Texas Crim. Rep., 116, and other cases.

Appeal from the District Court of Bexar. Tried below before the Hon. J. T. Sluder.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. E. Engel* and *Will A. Morriss,* for appellant.—On question of admitting declarations of deceased: Phillips v. State, 94 S. W. Rep., 1051.

On question of moral turpitude of witness: Caples v. State, 74 Texas Crim. Rep., 127, 167 S. W. Rep., 730.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant, under indictment for the murder of John Massey, was convicted of manslaughter.

His father, J. H. Wallace, and his brother, T. D. Wallace, were charged with the same offense under separate indictments. The father, J. H. Wallace, a man about sixty-five or seventy years of age, was indebted to the father of deceased, who was a merchant. The account was some seven or eight dollars. J. H. Wallace and a witness by the name of McGinnis were on the street in front of a saloon owned by a witness by the name of Booth, and were engaged in a conversation about their own business affairs. Deceased approached J. H. Wallace while thus engaged in regard to the collection of the account mentioned, and a difficulty ensued between them in which the deceased struck J. H. Wallace several times, bruising his face and knocking him down. Soon after the fight began appellant and his brother, T. D. Wallace, who at the time were in the saloon with a friend drinking a glass of beer, rushed out on the street where the difficulty was taking place. About the same time other people who were in the saloon also came out.

The eyewitnesses who were introduced by the State described the occurrence, and from their testimony we gather that after the old man had been knocked down he got up and approached the deceased, who walked backward towards the other side of the street; the evidence is conflicting as to which of the sons got out of the saloon first, though it indicates that the brother of the appellant reached the deceased first, and on his taking hold of deceased was struck by him.

The saloonkeeper, Booth, said that he saw one of the Wallaces strike the deceased in the stomach; that he could not say which one did it; that he thought it was one of the boys, and the blow was in the nature of a thrust with the right hand just below the naval; that he could not swear that appellant took any part in the difficulty; that he recollected that the old gentleman was out in the street and both of the boys were out there—one went, then the other, but he was unable to say which went first. The several other witnesses for the State related the matter in substantially the same way as the witness Booth.

The deceased, after the difficulty, went to his father's store, some two or three blocks away, and replying to an inquiry, said, "I am stabbed, I was stabbed by the Wallaces." He said T. D. put the knife in him (T. D. is a brother of defendant). The mother of deceased testified to a conversation had with him after he reached home, in which

deceased said: "Mamma, I have been cut. The Wallaces done it." I said, "Which one?" and he said, "T. D." McGinnis, an eyewitness for the defendant, was present at the beginning of the difficulty; saw deceased strike old man Wallace and break the skin on his nose and head. He recovered and went at Massey. "The next one out was T. D. Wallace. He grabbed hold of Massey and jerked him around, and Massey hit him on the head and it staggered Wallace. They kept fighting and the next I noticed was he knocked the old gentleman down in the street on his hands and knees. At that time I think everybody in the saloon was out, six or eight men. Massey struck first; he jerked his coat off and threw it on the sidewalk. Mr. J. H. Wallace was bleeding; the blood was running down his face and collar. I don't think the whole thing lasted over a minute or so. I don't think defendant ever got near enough to be hit or hit. I don't think he got nearer than six or eight feet. I think he had a bad foot. Massey was backing off across the street. T. D. Wallace and J. H. Wallace were going in the direction that he was backing, and William Wallace was going there to. The three Wallaces were about eight feet from him. I did not see a knife in anybody's hand. Don't believe William Wallace ever got close enough to strike Mr. Massey; don't believe Mr. Massey ever struck him."

The defendant testified that he was lame, using a crutch; that when the fight began his brother ran out towards where his father and deceased were and took hold of deceased; that he was retarded by the condition of his foot; that while out in the street he saw Massey strike his father and knock him to his knees, face forward; that he reached to help his father but he got up before appellant got hold of him; that for the moment his attention was not directed to Massey, and when he looked up the latter was going up the street, and he took hold of his father's arm and said, "What is all this trouble?" Noticing at the time that his father had a knife in his hand, appellant said, "What on earth are you doing with that knife?" to which his father replied, "He will tell you." The brother walked up about that time and they went into the saloon and washed the blood from the face of the father and brother. Appellant claimed that he never struck Massey and did not get into the fight and was never closer than fifteen feet to deceased; that the nearest he came to him was when he endeavored to pick up his father in the middle of the street, and Massey went off.

The court submitted the issues of murder, self-defense, defense of another and the law of principals.

Assuming that there is sufficient evidence to show that appellant engaged in the difficulty, or to raise the issue justifying that conclusion, we do not think it authorized submission of the law of principals. From the case of Renner v. State, 43 Texas Crim. Rep., 347, the law of principals is succinctly stated as follows: "Where there is no conspiracy to commit an offense, yet it is committed by one, and another is present,

and knows the intention of the others, and by words or acts aids the persons engaged, he is guilty with them to the extent of his knowledge, or for the reasonable consequence of the acts aided."

The evidence does not suggest the idea of conspiracy. Nor does it, we think, suggest that appellant aided or acted with them under circumstances which would render him responsible for their acts or that of either of them in stabbing deceased. Cases illustrating this view are collated in Pizana v. State, 81 Texas Crim. Rep., 81. The difficulty does not appear to have been anticipated. Appellant's connection with it arose during its progress, no witness testified in specific terms that appellant struck the deceased. Deceased claimed that he was stabbed by appellant's brother. Other testimony indicates that the father did so, and he was in possession of the knife after the fight. Whether stabbed by the father or brother, it seems to have been an independent ac and not one for which appellant would be responsible as a principal.

The conversation between the deceased and his father and mother, which took place after the deceased went to his home was, we think, inadmissible because it was hearsay.

After the difficulty, and after deceased received the wound, the deceased, after walking two blocks, went into a saloon and asked a witness to go and get his coat and hat. He had his hand over his stomach at the time, but did not mention the wound. Witness told him he did not have time to oblige him, and deceased went on home. On his way home he stopped at his father's store, which is three blocks from where the difficulty occurred, and had some conversation with him, telling him about how the difficulty came up, and that he was stabbed. He then, on the suggestion of his father, went to the house, met his mother, and told his father to phone for a doctor, after which he got into an automobile and went to the hospital. Before going to the hospital he asked a friend to make him a cigarette; he was undressed. A witness testified that he was very calm; that he wanted to shield his mother and did not want her to know how bad he was cut. He made a suggestion that his lodge dues touching his life insurance be paid before midnight as he had neglected to pay them, and said he did not know what was going to happen to him. We do not think these conversations, taking place after deceased reached his home, are res gestae. They were mere relation of facts taking place after .the condition of the mind, which is the basis for the admission of. the statements under the rule of res gestae, had passed off. They were so disconnected from the main transaction as to negative spontaneity which the law requires to characterize statements admissible as res gestae. The elements of res gestae were wanting. Wigmore on Evidence, sec. 1750; 12 Cyc., 429; Branch's Ann. P. C., p. 54, sec. 84, and cases listed; Deneaner v. State, 58 Texas Crim. Rep., 624.

Deceased's wound seems not to have been necessarily a fatal wound. After remaining in the hospital for several days and improving, he

went to his home. The doctor said he was anxious to go home; that his condition was such that he felt that he could get along just as well at home as he could at the hospital. The wound became infected, however, and he died some three or four days after he got home. The infection caused heart trouble.

The record discloses the absence of any legal predicate for the admission of the conversations with the deceased after he reached his home upon the theory that they were dying declarations. There seems to have been no proof of a consciousness of impending death, or otherwise a predicate laid which, under the law of dying declarations, is essential. See Branch's Ann. P. C., pp. 1034-1035, sec. 1863, citing cases, among them Lister v. State, 1 Texas Crim. App., 739; Craven v. State, 49 Texas Crim. Rep., 78; Hunnicutt v. State, 18 Texas Crim. App., 498; Douglas v. State, 58 Texas Crim. Rep., 122; Highsmith v. State, 31 Texas Crim. Rep., 37; Francis v. State, 75 Texas Crim. Rep., 362, 170 S. W. Rep., 779; Ledbetter v. State, 23 Texas Crim. Rep., 247; Phillips v. State, 50 Texas Crim. Rep., 127.

The testimony of M. L. Massey as to the details of his business transactions with J. H. Wallace should, we think, not be admitted upon another trial. Neither should the fact that appellant's bill at Massey's store was unsatisfied at the time of the trial. Nor the fact that deceased's lodge dues were paid by a member of his family after he was injured. Nor the fact that the father of deceased met appellant on the street some time after the difficulty and appellant drew out a knife and "looked daggers" at the witness and appeared angry.

The witness McGinnis having been discredited by proof of indictment for perjury, should have been allowed to explain that he was not guilty of the charge. Johnson v. State, 155 S. W. Rep., 875; Cowart v. State, 71 Texas Crim. Rep., 116, 158 S. W. Rep., 809; Tippett v. State, 37 Texas Crim. Rep., 186.

Because the evidence is insufficient to show that appellant was culpable under the law of principals and because of the admission in evidence of the hearsay statements of deceased, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*