J. W. RICKMAN v. THE STATE.

No. 20128. Delivered November 1, 1939.
Rehearing Denied January 3, 1940.

The opinion states the case.

*George P. Brown* and *E. W. Merritt,* both of McKinney for appellant.

*H. H. Neilson,* County Attorney of McKinney, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the murder of Marion Taylor, a motorcycle policeman of the town of McKinney, Texas, and upon his trial therefor he was given a death penalty by the jury.

A brief summary of the facts, taken from the State's Attorney's brief, is as follows:

"About 8 o'clock on the evening of March 2nd 1938 Marion Taylor, a city policeman, of the city of McKinney in Collin County, Texas, was killed, by being shot eight times, three times in the right front breast, once in the right arm, and four times in the back, with a pistol by the defendant J. W. Rickman. The shooting took place in front of the Noles Filling Station in the north part of McKinney in Collin County, Texas. At the time Marion Taylor was killed he was on duty and was riding a motorcycle on Highway 75.

"About 7 o'clock on the evening of March 2nd 1938 defendant J. W. Rickman called a cab to come to 5519 E. Grand in Dallas, Texas. Henry Lee Jackson, who was a taxicab driver for Nichols Brothers, drove his taxicab to 5519 E. Grand in Dallas and picked up the defendant J. W. Rickman. Defendant directed the driver to go out on Greenville Avenue and when he got to the

intersection of Lewis Street and Greenville Avenue defendant put a pistol in the back of the taxicab driver and said, 'Get going and don't make a bobble.' Defendant forced the taxicab driver to drive his car down Highway No. 75 toward McKinney and told him if he didn't make it go faster than 50 miles an hour he would kill him. All of the time coming toward McKinney the defendant had his gun between the shoulders of the taxicab driver, the taxicab driver sitting under the wheel and the defendant sitting in the back seat of the taxicab. The taxicab driver told the defendant he did not have any license to operate out of the city and that a highway patrolman was liable to pick them up. The defendant told the taxicab driver to drive on, that he would take care of them, and kill him, meaning the taxicab driver, too, if anything happened. When the taxicab got to McKinney, the defendant forced the driver of the cab to detour around the public square until he got in the north end of the city of McKinney and then forced him to get back on Highway No. 75 in the north part of the city of McKinney and then told him to 'Step on it and make the damn thing run.' The taxicab driver made the taxicab run as fast as he could and while driving, the motorcycle policeman Marion Taylor rode up beside them and said to the driver 'Pull over to the curb and stop.' The evidence showed that when the taxicab passed Frank Waters' filling station in the north part of the city of McKinney that the taxicab was traveling about 60 miles an hour and the motorcycle policeman Marion Taylor overtook the cab about 100 yards north of the Frank Waters' filling station and stopped it. Said Frank Waters' filling station is in the north part of the city of McKinney.

"The taxicab driver stopped the car, the defendant having had his gun in his back all of the time coming up the highway. The motorcycle policeman pulled up to the car about even with the driver and put his foot on the running board of the car. The officer said 'Where are you going?' The taxicab driver did not answer but the defendant in the back seat said, 'We are going four miles out in the country to see my sick mother.' The motor cycle policeman said, 'What is your name?' and when that happened the taxicab driver gave the policeman a sign by closing his right hand with the thumb pointing toward his body and pointing back and forth several times toward where the defendant was. The defendant said his name was McCullough. This happened just immediately prior to the shooting. The police officer took hold of the back door and opened it and the defendant J. W. Rickman began shooting. He shot several times. The motorcycle policeman, Marion Taylor, crumpled

forward on his motor. Defendant fired his gun two or three times before the motorcycle officer fired. The officer was in uniform and had a badge on his cap and one on his coat, as well as on his Sam Brown belt. The officer shot twice and the shots lodged, one in the back window and one in the roof of the taxicab. When the officer opened the back door with one hand he had his gun in the other hand. Immediately the door was opened the defendant began shooting. The officer never said anything to the defendant after he opened the door. He just grunted after the man shot him; he grunted one time after the defendant shot him, and his dead body was shot eight times. The testimony shows that the east line of the corporation of the city of McKinney ran through the center of the paved highway, and it seemed from the testimony that the cab when it stopped, while still on the pavement, was some few feet east of the center line of such road, and that the deceased officer's motorcycle was also without the corporate line of said city a short distance."

Appellant's bill of exceptions No. 1 complains of the fact that the witness Henry Lee Jackson, the taxicab driver, was permitted to testify, over appellant's objection, that after the deceased had stopped the taxicab, and was talking to both himself and appellant, the driver "closed his hand with the thumb pointing towards the driver's body, and pointed it back and forth several times towards where the defendant was. It is shown that immediately, or soon thereafter, the shooting began. It is also shown that the appellant was on the back seat of the car, and the driver in the front seat, with the officer with his foot on the running board of the car, or astride his motorcycle, which was right at the left side of the car. We are impressed with the idea that this is the transaction itself, all of which took from only two to four minutes in its happening, and such testimony is res gestae of this transaction. See 18 Tex. Jur., p. 293, et. seq.

Bill of exceptions No. 2 is concerned with a conversation had by the deceased with A. G. Sparlin, a deputy sheriff, relative to the fact that one Jimmie Latham, a constable, had been up all night looking for J. W. Rickman, the appellant, and in that conversation the deceased, Marion Taylor, made the statement that he (Rickman) was the boy that stole the car at Wolfe City. This conversation was supposed to have taken place about 5 o'clock in the afternoon of the killing. To the same general effect is bill of exception No. 3 relative to the testimony of W. E. Button, another deputy sheriff, showing that on the same

afternoon he had informed the deceased relative to hearing over a broadcast that a car had been stolen at Wolfe City. Bill of exceptions No. 4 is to the further effect that there was admitted, over appellant's objection, the testimony of Alex Burk, a peace officer of the city of McKinney, who testified that on the afternoon of Marion Taylor's death, about 6 o'clock, the deceased told the witness that he knew J. W. Rickman, the appellant, and Marion Taylor knew that the officers were looking for appellant for a felony committed in Hunt County the night before, and at such time the deceased gave witness a description of J. W. Rickman. All three of these bills, so we think, can be treated together. We think all this testimony admissible as showing knowledge on the part of the deceased of the commission of a felony as a basis for a legal arrest, as well as showing an acquaintance with the appellant. Earles v. State, 106 S. W. Rep. 138. The deceased had no warrant of arrest for appellant, and of course if the detention of appellant was illegal, then under his right of self-defense he could use all the force necessary to effect his release from such illegal arrest. We are early met with this proposition in the case, and unless there was a legal arrest, there are numerous charges refused by the trial court that should have been given herein.

We are impressed with the idea that there were four separate and distinct grounds upon which this attempted arrest was legal, and that the above testimony was properly admitted as going to show the legality of such detention. The above testimony shows that the deceased was informed that J. W. Rickman had committed a felony, and that deceased was acquainted with Rickman, and that he was a fugitive from such felony. If that be true, and surely if he knew Rickman he recognized him when he saw him in the car, then under Art. 215 C. C. P., he would have the right to pursue and arrest the accused. It seems to us that it was admissible to show the acquaintance of the deceased with appellant, and also his knowledge of the commission of a felony by appellant. See Vaughn v. State, 113 S. W. (2d) 895.

A second ground justifying this arrest, so we think, is the fact that appellant was at the time in possession of a pistol, which pistol he had held in the back of the cab driver all the way from Dallas to McKinney, and which he still had when accosted by the deceased on the first time in the streets of McKinney, and which he still had at the time of the killing. True it is, however, that appellant contends that he was a traveler, and as such exempt from the law prohibiting the carrying of a pistol on or about his person. We answer this

contention by saying that he had only traveled a distance of about thirty-two miles in approximately an hour, and therefore was not such a traveler as was contemplated by Penal Code 1925, Art. 484. See Branch's Penal Code p. 562, Sec. 976, and, in the second place, a fugitive fleeing is not, under this statute relative to the carrying of arms, a person traveling. See Shelton v. State, 27 Tex. Crim. App. 443, 11 S. W. Rep. 457; also see Harris v. State, 77 S. W. Rep. 610; also Art. 487, Penal Code, authorizing the arrest without warrant of any person guilty of violating the statute relative to carrying arms on or about his person.

We think the testimony complained of was properly admitted as showing a basis for the possession of knowledge upon the part of Marion Taylor that appellant had committed a felony, that he knew appellant, and that appellant was escaping, after the commission of a felony, with no time to procure a warrant for his arrest. The only defense made or offered herein was that the attempted detention of appellant by the deceased was illegal, there being no warrant therefor in the deceased's possession, and therefore that the appellant had the right under the law to enlarge himself from such detention, even going to the extent of taking the life of the officer, if necessary, in order to effect his release. It is the State's contention herein that the presence of a warrant for appellant's arrest was not necessary because of the fact that the appellant fell within the category of those permitted by statute to be arrested without warrant on account of his being at the instant of the attempted arrest actually engaged in the commission of various offenses, not only of certain misdemeanors for which an arrest could be made legally without having first obtained a warrant, but also of certain felonies in the presence of the one attempting such arrest; and that it was therefore the duty of appellant to submit himself to the custody of the deceased at such time. The testimony shows that the appellant in the city of Dallas had, a short time prior to the killing, forcibly taken possession of the person of the driver of the taxicab, and had also taken possession of his taxicab by means of the display of a pistol, a deadly weapon, and had at such time as well as continuously thereafter, up to the time of the killing, made an assault upon such driver by threatening him with such weapon thus unlawfully carried, which constituted a felony, and that he was in the position at such time of committing a theft of such taxicab, and was in the act of effecting his escape at the time the deceased attempted to question and detain him. Under these circumstances, if any one of such enum-

erated offenses was present, the law did not require the presence of a warrant of arrest before such detention became legal, but the duty became clear that any citizen, though not an officer, had the right to arrest and detain appellant without being in possession of a legal warrant for his arrest.

Art. 212, C. C. P. provides that "a peace officer *or any other person* may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense *is* one *classed as a felony*, or as an offense against the public peace." It is contended, however, that the deceased was · only protected as a peace officer within the corporate limits of the city of McKinney, and that appellant's attempted arrest took place outside these limits, and therefore he was outside of his delegated powers when he thus attempted such arrest. While not agreeing with such contention, nevertheless we say that should we ignore the deceased's official capacity as a peace officer, nevertheless he could make a legal arrest as a private citizen, or as "any other person" under the above article. We think it to be in consonance with the rules of reason to say that having eyes to see, the deceased could see and did see the pistol at some time during this tragedy, and the threatening attitude in which it was exhibited by appellant, and surely knew that an illegal and felonious assault was being made therewith by appellant. The testimony shows that appellant's detention was initiated by the deceased coming alongside the speeding taxicab driver and ordering the driver to "pull over to the curb." The deceased first questioned such driver, who directed the officer's attention surreptitiously to the appellant sitting in the rear seat, who still had his pistol drawn on the driver. The deceased then addressed appellant, inquiring where he was going, and what was his name. Having received answers thereto, he opened the rear door, at which instant a fusillade of shots,— eight in number, all the appellant's gun contained,—terminated the officer's life. It would be contrary to all human experience for us to say that Mr. Taylor failed to see this weapon which was held by appellant on the cab driver's back, and if such was seen by him, then he had the right as a private citizen to arrest this appellant without the presence of a warrant of arrest.

We think this attempted arrest can be justified as one in which no warrant of arrest was demanded to be present on the above grounds, without having to rely upon the provisions of other and further statutory enactments relative to an arrest without a warrant for violations of the road law, and thus believing we pretermit a discussion of such other matters. This

conclusion disposes of a major portion of the thirty-two requested and refused instructions to the jury.

It is further contended that the trial court should have charged the jury on the law of murder without malice, and special charges were presented to the trial court embodying that doctrine, which charges were by such court refused. It is fundamental that the trial court should only give in charge to the jury the law as applied to the facts presented in the case. It appears to us that there are but two propositions presented by the proof in the case. If this was an unlawful arrest, then appellant was entitled to an acquittal on his plea of self-defense, and the court so instructed the jury. If this was a lawful arrest, then the appellant was guilty of murder with malice. It is contended, however, by appellant that the evidence relative to his consuming quantities of intoxicating liquor on the day of the killing, and his actions prior to leaving Dallas, evidencing a high degree of nervousness, and his suspicious actions while in Dallas on that day, would indicate that his mind was in such a condition as would evidence the fact that he was animated by such passions as showed a mind incapable of cool reflection at the time of the homicide. There is no further testimony indicating such a condition of the mind, save that just above referred to. Such testimony relative to the consumption of the intoxicating liquor, had a sufficient amount been taken as to induce a temporary insanity from its recent use, might have become proper as a subject for a charge thereon to the jury relative to a mitigation of the penalty, but we are not confronted with such a condition in this case. The consumption of such liquors was used only argumentatively as a basis for a requested charge on murder without malice. We are unwilling to extend the doctrine to that extent; nor do we have the power to thus amend Art. 36 of the Penal Code relative to intoxication as a defense.

The jury was well within their province, so we think, in holding that this was a legal arrest, and that the homicide was one of murder with malice. It is shown by the testimony of the cab driver that he had no license to operate a taxicab outside of Dallas, and that he told appellant that such was the fact, and that a highway patrolman would be liable to pick them up. Appellant told the driver to drive on, that he would take care of them, and kill him (the driver) too if anything happened. It is also shown that he repeatedly threatened the cab driver with death at the point of his pistol which he kept at all times against the driver's back. We agree with the learned trial judge, since gone to his justly earned reward, that murder

without malice did not appear in this case, and thus believing, the major propositions raised by appellant herein have been written upon. Those not written on have been carefully considered by us and are overruled.

This is a severe verdict and one that demands serious consideration by juries as well as appellate courts. The crime charged is itself a serious one, and if the State's testimony is true, it strikes at the foundation of our social system laid out for the preservation of law and order, and the peace and happiness of the people. The jury saw fit to exact the extreme penalty from this appellant in what we believe to have been a fair and impartial trial, free from erroneous matters, and, so believing, we have no other alternative than to affirm the same. Appellant's attorneys, appointed by the court, have exhibited both energy and research in their efforts in his behalf, for which they are to be commended.

This judgment is affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant, in his motion for a rehearing, complains of various statements in our original opinion as not justified by the record. We have again reviewed the record in the light of the objections addressed thereto, but remain of the same opinion as originally expressed by us. He first criticizes the following statement in our opinion: "The above testimony shows that the deceased was informed that J. W. Rickman had committed a felony and that the deceased was acquainted with Rickman, and that he was a fugitive from such felony. If that be true, and surely if he knew Rickman, he recognized him when he saw him in the car, then under Art. 215 C. C. P. he would have the right to pursue and arrest the accused."

Appellant asks where there is any evidence that a felony had been committed? If a car was stolen, where is there any evidence to show such constituted a felony? We quote from the testimony given by Alex Burke as follows: "I know that on the afternoon of Wednesday, March 2, 1938, Marion Taylor knew that the officers were looking for J. W. Rickman for a felony committed in Hunt County on the night before. At that time Marion Taylor gave me a description of J. W. Rickman."

It occurs to us that this testimony alone justified the statement complained of in our original opinion. His second criticism is addressed to the following statement in our opinion:

"A second ground justifying this arrest, so we think, is the fact that appellant was at the time in possession of a pistol, which pistol he held in the back of the cab driver all the way from Dallas to McKinney, and which he still had when accosted by the deceased on the first time in the streets of McKinney, and which he still had at the time of the killing."

He then asks where there is any proof that appellant still had the pistol when accosted by the deceased for the first time on the streets of McKinney and which he still had at the time of the killing?

We quote from the testimony of Henry Lee Jackson, the cab driver: "He then continued to keep that gun stuck in my back, that pistol. That was the defendant, J. W. Rickman who did that. All the time I was coming from Dallas to McKinney, he had his gun between my shoulders, touching my body. The defendant had this gun in my back all the time I was coming up that highway."

That he shot the deceased, a city policeman, with a pistol when he undertook to arrest him is not even questioned. Consequently he still had the pistol at that time. Here we have testimony that appellant was, by the use of a pistol, a prohibited weapon, making an assault upon the taxi driver, which is a felony in this State, and for which the deceased was justified in arresting appellant.

In his motion appellant also asks for proof that the deceased actually saw the pistol in the hands of the appellant. Of course the deceased, who is dead and whose lips were closed by the fatal wounds inflicted upon him by appellant, was the only person who knew this, but we may look to the circumstances testified to by others and if these circumstances logically lead to such a conclusion, the requirements of the law have been met. The deceased had eyes; he was looking at the occupants of the car; the windows of the car were down and there was nothing to obstruct his view; hence the only reasonable conclusion to be drawn from the circumstances is that the deceased saw appellant making an assault upon the cab driver with a prohibited weapon, which authorized him to make an arrest. Therefore it is obvious that several reasons existed for the arrest of appellant.

To answer each of the various arguments in appellant's motion would extend this opinion to great length and serve no useful purpose. We deem it sufficient to say that in view of the fact that the extreme penalty was assessed against him, we have gone over the entire record with great care, but see no

good reason for receding from the conclusions reached by us on original submission.

The motion for a rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.