## W. T. RHODES V. STATE.

No. 2143.   Decided January 8, 1913.

Rehearing Denied February 19, 1913.

1.—Assault to Murder—Misconduct of Jury—Allusion to Defendant's Failure to Testify.

Where the bills of exception, concerning the misconduct of the jury alluding to defendant's failure to testify, were signed by the trial judge about sixty days after the adjournment of the court and were to the overruling of the motion for new trial and not to the introduction of testimony, there was no reversible error; besides, the testimony, if considered, did not show such misconduct of the jury as to require a reversal.

2.—Same—Evidence—Examining Trial Testimony.

Where, upon trial of assault to murder, the defendant, in order to impeach or contradict the main State's witness, offered the entire examining testimony of the said witness, without laying a predicate therefor, and no part of the testimony was pointed out which defendant sought to impeach, there was no error in refusing same.

3.—Same—Evidence—Letter.

Where, upon trial of assault to murder, the State introduced a letter written by the defendant to a State's witness about a week after the alleged assault, trying to induce the witness to leave the country, there was no error; besides, the bill of exceptions was defective.

4.—Same—Evidence—Conclusion of Witness.

Where, upon trial of assault to murder, the defendant endeavored to introduce in evidence the conclusion of the main State's witness to the effect that she believed defendant did not aim to hurt her, there was no error in excluding same.

**5.—Same—Evidence—Declarations of the Defendant.**

Upon trial of assault with intent to murder, there was no error in introducing in evidence the declarations of the defendant made before the alleged assault, to the effect that he was going to see his children if he had to wade in blood up to his chin; other testimony showing that he shot the injured party who was his divorced wife when she forbade him to come to see said children.

**6.—Same—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to murder, the evidence sustained the conviction, there was no error.

Appeal from the District Court of Grayson. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Cox & Cox* and *Jas. L. Cobb,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for assault to murder, the minimum punishment being assessed.

The facts show that appellant and his wife were not living together. He went to the residence of his wife where their two children were also living, and while there made an assault upon her by shooting at her with a pistol. After appellant shot at her she ran and he chased her in the front yard and a scuffle ensued, during which the wife said she heard the pistol click. She finally succeeded in taking the pistol away from him. The same facts are substantially in evidence by another witness.

The first bill of exceptions was reserved to the action of the court overruling the motion for new trial. Attached to the motion for new trial is the affidavit of the juror Hickman in which he states that while in the jury room one of the jurors remarked to affiant that "if defendant had testified in this cause as to where he was going with the pistol, or what he was intending to do with it, we could get together and give defendant a lower penalty." That such conversation and discussion of the testimony occurred while deliberating on the case. The juror who talked with affiant works at the Nursery Farm, in Sherman, Texas. That the exact language of the jurors and the conversation had about defendant failing to testify was not remembered by the witness, but the fact that the defendant did not testify was spoken of as above related. It is also stated in the affidavit that the charge of the court was not read or referred to in the jury room, and some one of the jury remarked, "It is not worth while to read the charge." The State made reply upon three grounds, which are unnecessary here to state, signed by the county attorney. The evidence set out in the bill and connected with the motion for new trial is, in substance, as follows:

The juror Phillips testified that during the deliberation of the jury after their retirement and before the verdict was reached, he did not recollect any conversation in reference to the defendant having failed to testify in the case on his own behalf. On cross-examination he said he would not be positive whether anything was said about it or not; if there was he did not hear it.

Andrews, another juror, testified, "I heard a remark about it is all. That was when we first went in the room, some one remarked that we won't consider his not testifying in his own behalf. If anything else was said I did not hear it." This juror did not remember which one of the jurors made the remark. On redirect examination the juror stated that some one made that remark, but he did not know why the remark was made, or what caused it to be made.

The juror Gee testified he heard no reference to the failure of defendant to testify until after the verdict had been written out. He further states on cross-examination, "Somebody said something about him not testifying and I made the remark that he didn't have to. I don't know as I could say how many of them talked about it. We talked about it being a short case, and after a while some one made the remark about him not testifying, and I told them he didn't have to. I did not say I wondered why the defendant didn't testify in the case." He said he did not consider the fact that the defendant did not testify.

Brimlee, another juror, testified that the jury did not consider the defendant's failure to testify so far as he recollected. He did not hear it discussed along about the time the verdict was being framed about the defendant having failed to testify. It could have happened, the juror says, and he might not have heard it. They were all pretty close together, and if anything was said about it he says he did not hear it.

Park, another juror, said: "I did not hear anything said in the jury room in reference to the failure of defendant to testify as a witness. I couldn't say it occurred. I would not swear it did not occur, but I think I would have heard it because I was sitting at the table with all of them. I think I heard everything said in the jury room. I did not hear a remark at any time when it was said he wondered why defendant had not testified in the case.

Nash, another juror, testified: "If during the discussion anything was said concerning the failure of defendant to testify as a witness I never heard it. If it was discussed about defendant having failed to testify, and some one said he did not have to testify unless he wanted to, I did not hear it. I did not hear that in the jury room before we came out."

The juror O'Neal testified that he did not think anything was said in reference to defendant's failure to testify before the verdict was reached and signed. On cross-examination he said: "I think there was something said about it after the verdict was rendered; my recol-

lection is there was not anything said about it until after the verdict was rendered.''

Hickman, the juror who made the affidavit, said that he remembered something was said about defendant's failure to testify, but he did not remember exactly what it was. This juror identified Brimlee as the man who made the remark, but he did not remember whether it was before or after the verdict was signed.

Under the authorities it would seem if this matter could be considered at all, it is not of sufficient importance to require a reversal. The bill of exceptions was signed about sixty days after adjournment of court, and it was a bill to the overruling of the motion for new trial and not to the introduction of the testimony.

Bill No. 2 recites that the appellant wished to introduce the entire examining trial testimony of the witness, Stella Rhodes, the assaulted party. There was no predicate laid for the introduction of this testimony, and the court sustained all objections. The purpose for which this testimony was offered, if for anything at all, which may be indirectly gathered from the bill, was to contradict the witness, Mrs. Rhodes, but what part of her testimony was offered for that purpose is not stated. If we look to the record of the facts and the testimony given before the examining trial it is almost a reproduction one of the other. There is no part of it pointed out sought to be impeached, and the attorney offering the testimony, in answer to questions, failed to point out any part of it, although requested to do so by the court.

Bill of exceptions No. 3 was reserved to the action of the court, permitting a letter written by the defendant to Mrs. Rhodes on July 23, 1911, about a week after the assault, to be introduced in evidence. It is unnecessary to go into a discussion of this matter. The grounds of objection are not stated, and an inspection of the letter, at least some portions of it, shows it was material and pertinent. Among other things, writing of the transaction which formed the predicate for this prosecution, to-wit: shooting at the woman with his pistol, he said: ''I am sorry that this ever happened, so please do not appear against me in court. I will be good to you and the children the rest of my time, and do anything I can for you. If you want to go, please let me know and I will get the money together. Stella, I will see you and the children right soon, and will do what I told you I will do. I will do all I can.'' Among other things, he said: ''Stella, if you and the children will leave Sherman when the time comes in August, I will pay your way and back. I am going to work in the ditch in the morning, and then the first of August at the shop, and I will help you all I can. I will give you all the money I can Saturday night. I will guarantee you I will help you, and do what I can. Stella, do not be afraid of me; I will not bother you. I guess I can't get to see my children any at all. That is awful.'' This testimony was admissible as showing he was trying to induce the witness to leave the country, at least leave Sherman and not appear against

him as a witness in the case. That is the effect and purport of the letter.

Another bill of exceptions recites that while the prosecuting witness, Mrs. Rhodes, was on the stand, and after locating the place and time, defendant proposed to prove that she stated to the witness Armstrong that she did not believe defendant aimed to hurt her, and she knew it, or words to that effect, or in substance that. The county attorney objected on the ground that it was hearsay, a conclusion of the witness, and no predicate was laid for its introduction. The court sustained the objection. Appellant's counsel said: ''I want to get a little further, if since that time the witness made that statement, the prosecuting witness and the only witness to the shooting, if she made that statement, it would show the position and light in which she viewed the situation at that time, if she made any statement about that afterwards, after the alleged offense was charged, to outside parties who were not interested in the matter, it would have a bearing upon the defendant's position in the case, as well as her own.'' The court sustained the objection, and appellant was not permitted to ask if she had not made the statement to Armstrong. The State's objection was properly sustained.

Another bill recites that while the witness Butridge was on the stand, testifying in behalf of the State, he was asked the following question, after he had testified that he had had a conversation with the defendant: ''Q. What statement did he make to you in regard to·it? Mr. Cobb: In reference to what? Mr. Freeman: I will state to the court what I expect the witness to testify. Mr. Cobb: I object to any statement defendant made him you are talking about; any statement made by defendant with reference to his intention so far as the children are concerned. Any statement that he might have made in reference to the children I don't think would be admissible to this jury to show any malice toward prosecuting witness. Mr. Freeman: Will your Honor hear the testimony? It is in the nature of a threat.''

Without stating further these questions and matters, the witness was permitted to testify in the hearing of the jury, as follows: ''He stated that he believed he could get along with his wife if it weren't for other people butting in. I believe he went so far as to say his mother-in-law, and that he was going to see his children when he got ready, if he had to wade in blood up to his chin.'' This testimony, we think, was admissible in connection with what occurred shortly afterward. He went to see the children, and his divorced wife prohibited him coming to see them any more, and it was then the shooting occurred.

Another bill of exceptions recites the defendant proposed to prove by the witness Armstrong that Mrs. Rhodes told him that she did not believe defendant intended to hurt her. This was subsequent to the transaction; it was her opinion of the matter, and was not admissible.

We think the evidence is sufficient to justify the conclusion reached by the jury in their verdict, and the judgment is affirmed.

*Affirmed.*

[Rehearing denied February 19, 1913.—Reporter.]