## JOHN VAUGHN v. THE STATE.

No. 19283.   Delivered January 12, 1938.
Rehearing denied March 3, 1938.

The opinion states the case.

*W. A. Hogan,* of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of murder with malice and his punishment was assessed at death.

The record shows that appellant and Donald Baker shot and killed A. A. Edwards, a policeman of the City of San Antonio, who was attempting to arrest them after he had been informed by a credible person that they had stolen an automobile and robbed two service stations.

Bill of exception number one recites that the court erred in declining to grant him a new trial on the ground that the jurors, as a whole, discussed his failure to testify. Appellant offered two jurors, to-wit: Abadie and Wunsch, in support of his contention. Abadie testified that he had heard no discussion of the defendant's failure to testify; that if there was any such discussion he did not hear it. The witness was also asked: "When you went into the jury room and sat down to discuss the case, as you had a right to do, was not there at that time, a statement made in your presence by one of the jurors to the effect that if this man was not guily, why didn't he take the witness stand and defend himself?" He replied: "I don't remember a statement of that kind, no sir."

Upon cross-examination, he stated: "It was mentioned that he didn't take the stand. After we entered the jury room, we selected our foreman. We then took two ballots; the first one was as to whether he was guilty. They all voted guilty; the second was as to the punishment; eleven voted death and one

voted for life imprisonment, and then the one who had voted for life imprisonment said: 'Let's make it unanimous,' and he changed his vote to death, and then we wrote the verdict and the foreman signed it."

Wunsch testified on direct examination as follows: "I did not hear any discussion with reference to the defendant's failure to testify."

The State offered seven of the other jurors, but none of them testified to any discussion of appellant's failure to testify before the verdict was agreed upon.

The mere mention of the fact by the jurors that the accused did not testify is not grounds for a new trial. See Howard v. State, 174 S. W. 607; Carter v. State, 278 S. W. 640.

Bill of exception number two recites that the court erred in declining to grant appellant a new trial on the ground that T. L. Cude, one of the jurors in the case, was not a qualified juror because he was not a resident of Bexar County; that he married a lady at Whitsett in Live Oak County; that he paid his poll tax on January 23 in Live Oak County; that he had abandoned his home in Bexar County and was constructing a home in the former county. The bill of exception is insufficient to show that appellant was not aware thereof, or that the juror on his voir dire misled him with reference thereto. However, since this is a case in which the extreme penalty was assessed, we will consider the complaint, notwithstanding the want of a necessary allegation. The court heard the testimony of the juror and he testified with reference thereto as follows: "I live with my mother at Somerset in Bexar County, but work in the oil field at Whitsett. I owned property at Somerset and considered that my home at the time I was impaneled as a juror. I married on the 23d day of January, 1937, and since then have been staying with my father-in-law at Whitsett, but all of my personal belongings such as furniture, clothing, etc., are at Somerset."

We think that the court was fully justified in deciding that the juror was a resident of Bexar County. Moreover, it is well settled that it is too late to raise, for the first time on a motion for a new trial, an objection that the juror was not a resident of the county. See Jefferson v. State, 152 S. W. 908; Martinez v. State, 57 S. W. 838; Cubins v. State, 73 S. W. 396.

Bill of exception number three shows that Vic Gallagher, the radio operator for the city police, was permitted to testify that he broadcast the information of the theft of an auomobile, together with a description thereof and a description of the men who occupied it. Appellant objected thereto, on the ground that

it was leading, suggestive, prejudicial and inflammatory. The court qualified said bill and in its qualification stated that the only objection urged to said testimony was that it was leading and suggestive of the answer desired. That prior to that time, certain testimony had been given, and offered in evidence without objection, as to a radio broadcast of the robberies of two service stations.

It occurs to us that the radio broadcast by the operator advising the police throughout the city of the theft of an automobile, together with a description of the stolen car, and the robbery of the two service stations was admissible as tending to show that the deceased was informed by a credible person that a felony had been committed and the offenders were about to escape. This was sufficient, under Article 215, C. C. P., to authorize the deceased to arrest appellant and Baker, the occupants of the stolen car, without a warrant. See Burkhardt v. State, 83 Texas Crim. Rep. 228.

Bill of exception number four recites that Gilbert Halford, an employee of the Smith Motor Sales Company, was permitted to testify that on the night in question, about 10:45 P. M., Mr. Edwards, the deceased, was in said company's place of business; that while he and the deceased were talking together, they heard over the radio the announcement that an automobile had been stolen, giving its license number, a description of the car and of the men who were traveling in it. That deceased wrote the license number of said car on a piece of paper and stated that he was going by way of Austin Street as the car might come over on his beat; that about seven minutes later, he, the witness, heard an announcement over the radio of a wreck on the 400 block on Jones Avenue, the first block off Austin Street and immediately went to the place, where he found Edwards near the stolen car shot to death. Appellant objected to said testimony on the ground that it was a statement by the deceased in the absence of appellant as to where he was going and why; that it was irrelevant, immaterial, and highly prejudicial.

Ordinarily, statements made by another out of the presence and hearing of an accused are not admissible against him, but in the instant case, the witness testified as to what they heard over the radio, and testified further that deceased immediately left on his motorcycle and within seven or ten minutes was found near the stolen car, shot to death. The fact that the deceased, after hearing the radio broadcast, left Smith Motor Company's place of business and within seven or ten minutes was found shot to death was admissible, and conveyed the same idea and led to the same conclusion as the testimony objected

to. Hence, no injury could have resulted to the appellant from the admission thereof. Moreover, the objection being general, he did not bring himself within the established rule of this Court that a blanket objection to testimony, part of which is admissible and part inadmissible, is too general to be considered. See Ainsworth v. State, 287 S. W. 250; Wright v. State, 298 S. W. 296; Simmons v. State, 28 S. W. (2d) 1084. However, we think that it was admissible as it did not impinge upon any of his defensive theories.

By bill of exception number five, appellant complains of the introduction in evidence of his purported confession on the grounds that it was obtained by continuous and persistent questioning on the part of officers. When the objection was urged, the court heard testimony and first satisfied himself that it was a voluntary statement. However, the court instructed the jury that if they believed that said purported confession was not freely and voluntarily made, or if they believed that same was induced by duress, threats, coercion or promises on the part of the officers, or if they had a reasonable doubt thereof, to wholly disregard it and not consider it for any purpose. The testimony tending to show that it was obtained by duress, coercion, or promises or hope of reward is hardly sufficient to raise the issue. However, the court submitted the question to the jury which was all that the appellant was entitled to.

Appellant urged a number of objections to the court's charge. One was based on the ground that a charge on principals was not authorized by any evidence. We find ourselves unable to agree with him. The record shows that Donald Baker and appellant were friends; that Baker had been living in appellant's home; that on the night in question, they stole an automobile, disguised themselves, and then entered the stolen car and robbed two filling stations; that while they were fleeing in said car, deceased undertook to stop them as they passed him. That he pursued them and soon thereafter shots were heard at or near the corner of Jones Avenue and Austin Street. An investigation revealed the stolen car and the deceased's body near by with bullet wounds on the left and right sides of his body, indicating that he was shot by two parties occupying different positions. Appellant's confession admitted that they both shot at the deceased. Deceased, at the time he undertook to stop the fleeing car, was riding a policeman's motorcycle and wearing a policeman's uniform. Consequently, it must have been apparent to the appellant and his codefendant that the party who undertook to stop them and who they shot was a policeman, which fact tended to controvert appellant's statement of self-defense.

We think that the facts and circumstances, when taken all together, not only justify but require a charge on the law of principals.

Appellant next objects to the court's charge on the law of the right of officers to arrest without a warrant. The testimony as disclosed by the record, shows that the theft of the automobile and the highjacking of the two service stations had been broadcast over the radio; that the deceased's motorcycle carried a radio over which he received the information of said offenses. Having been so informed by the radio announcer for the city police of the City of San Antonio, a credible person, the deceased was authorized by law to arrest without warrant the persons who had committed said offense and who were attempting to escape. The charge with reference to the ordinance of the city, authorizing a policeman to arrest without a warrant, persons found in suspicious places, etc., might not have been authorized by the testimony, but said charge became harmless in view of the instructions given in reference to the law authorizing an arrest by an officer when informed by a credible person that a felony had been committed and the offenders were about to escape, so that there was no time to procure a warrant.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant's attorney has filed a full and exhaustive motion for a rehearing herein, and on account of the severity of the penalty we will endeavor to consider each point raised therein, although they may have been already noticed in the original opinion.

He first complains of the misconduct of the jury, and insists that there was a discussion of appellant's failure to testify on the trial hereof. All twelve of the jurors were called and examined on this proposition, and while it might be inferred from the mass of testimony adduced thereon that Mr. Abadie mentioned the fact that the defendant did not take the stand, a part of his testimony being "It was mentioned that he [appellant] didn't take the stand."

The only reference that we can find in the record to appellant's failure to take the stand seems to be from the above witness and jurors J. Ed Brown and Mr. Fitch. The last two jurors say that the only allusion made thereto was after the verdict had been decided upon and written down, and signed by the foreman; that upon its being alluded to one of the jurors said that they had been instructed by the judge not to use that or ·refer to it in any way.

All the remaining jurors testified that if any discussion relative to the defendant's failure to testify was had they did not hear it. The general impression to be gathered from ·reading the testimony of all twelve jurors brings us to the conclusion that immediately upon their retirement into their room they elected or appointed their foreman, who suggested that they deliberate a few minutes before beginning to ballot on the case; that they did so in silence; then they took a ballot on appellant's guilt, and all voted him guilty; that they then voted on the penalty, and eleven ballots were cast for death and one for life, and the juror voting for a life penalty immediately spoke up and agreed to change his vote to the death penalty, and thus make it unanimous. They then notified the sheriff that they were ready to return their verdict, but the court not being accessible at such time, they had to wait some thirty minutes or more until the court appeared, when their, verdict was received and they were discharged. That either before or after their verdict was arrived at, and written by Mr. Hueston, their foreman, Mr. Abadie, a juror, made some statement relative to why Mr. Blanton, appellant's attorney, did not place him on the stand, and that there was no further discussion relative thereto. Two of the jurors had some recollection of such statement by Mr. Abadie, but place the same at a time after the jury had arrived at their verdict and were awaiting the presence of the judge in order to return such verdict into court.

Mr. BRANCH in his Annotated P. C., page 293, says: "A bare ·allusion in the jury room to defendant's failure to testify when immediately suppressed will not of itself cause the judgment of conviction to be set aside," citing many authorities.

Again he says on same page: "A discussion by the jury of defendant's failure to testify will not cause a reversal if it is not shown that such discussion was had before they agreed on the verdict including the penalty. Stepp v. State, 53 Texas Crim. Rep. 160, 109 S. W. 1093; Smith v. State, 62 Texas Crim. Rep. 281, 136 S. W. 1063; Rhodes v. State, 153 S. W. 128."

"The mere mention in the jury room of defendant's failure to testify when immediately rebuked and the jurors informed

that it is not to be considered is not ground for reversal. Jenkins v. State, 49 Texas Crim. Rep. 461, 93 S. W. 726."

The district judge heard all the testimony, and doubtless received the same impression therefrom that we have reached, that is that there was no more than a bare allusion to the defendant's failure to testify, if the same was mentioned at all, and that if such was made, it was after the ballots were had and the punishment fixed and the verdict written. We are therefore constrained to overrule appellant's contention relative to such misconduct.

Appellant next complains of the fact that the juror T. L. Cude was not a resident of Bexar County, and was therefore not a qualified juror in this case. This matter was gone over rather fully in the original opinion herein, and no useful purpose would be served by again writing thereon. We think the matter was properly disposed of therein, and this contention is overruled.

Appellant next complains of the fact that the attorney who represented him at his trial was neither hired by him nor appointed by the court to defend him, and that he was physically unable to prepare and file a formal motion for a new trial herein, and that he died a few days later after the trial. As to the attorney's employment or appointment, we confess our inability to understand the statement, its purpose or effect. We do know that the record shows such attorney to have appeared for the appellant, and appellant seemed to have accepted his services, and such attorney continued to serve throughout the trial. No motion of any kind was made relative to a continuance or a postponement, and the mere fact of the court reporter preparing and filing a motion for a new trial would not of itself be a matter of great moment. We can not say that appellant was denied representation at his trial, nor that he was not represented by counsel, and the statement in the motion that such attorney was not employed by the appellant nor appointed by the court is outside the record and can not be considered by this Court. Suffice it to say that appellant was represented by counsel, whose regrettable death took place soon after the conclusion of this trial, and we can see no reasonable ground upon which this Court can go further in such matter.

We have written rather fully in this motion, and can only commend appellant's attorney, who seems to have been called into the case after the attorney who represented appellant in his trial had died, for such attorney's diligence and energy in presenting to us the matters complained of as erroneous at such trial. However we are not able to agree that such matters pre-

sent errors which should result in a reversal of this cause. That appellant was a violator of the law on the night in question, there can be no doubt; that any person had the right to apprehend him is also without question; that the deceased knew of these violations is also shown, and that in attempting to apprehend appellant, as it was deceased's duty to do, and as he had a right to do, the deceased lost his life at the hands of appellant and appellant's confederate in crime while they were acting together. The jury saw fit to exact the extreme penalty of appellant, and this Court, believing that he has had a fair, impartial and legal trial, has no alternative other than to overrule this motion for rehearing, and it is therefore overruled.