HOWARD E. STICKNEY V. STATE

No. 31,109. January 20, 1960
Motion for Rehearing Overruled March 16, 1960
Second Motion for Rehearing Overruled April 13, 1960
Writ of Certiorari Denied by Supreme Court of the United States
May 31, 1960. Filed June 6, 1960.

*W. E. Martin, Kenyon Houchins*, Houston, on appeal only, and on the brief; *O. John Rogge*, New York City, for appellant.

*Dan Walton*, District Attorney, *Neil McKay, Samuel H. Robertson, Jr.*, Assistants District Attorney, Houston, and *Leon Douglas*, State's Attorney, Austin, for the state.

DICE, Judge.

Appellant was convicted of murder and his punishment fixed at death.

The conviction is for the murder of Shirley Barnes which the indictment alleged was committed on or about the 24th day of May, 1958.

The state's evidence shows that the deceased, Shirley Barnes and her husband, Clifford Barnes, lived in apartment 7 at 900 Ruth Street in the city of Houston. The appellant and Clifford Barnes were both employed by the Texas Highway Department in Houston and frequently the three visited with each other and went places together. The deceased, Shirley Barnes, was employed in an insurance office and when she failed to report

to work on Monday and Tuesday, May 26th and 27th, 1958, two of her fellow employees went to her apartment on May 27th to ascertain her whereabouts. Upon arriving at the apartment they observed a large number of flies on a window screen and could smell a strong sickening odor coming from the apartment. As a result of their visit the dead body of the deceased was found on a bed in the apartment. When the body was found it was in the nude, bloody, lying on its back with a pillow over its head and one eye protruding. Blood stains were also on the sheet under the body and blood spots were found in the room, on the door facing and on the sidewalk leading to the apartment. There was also found on the bed sheet under the vagina of the body positive seminal stains and two pubic hairs adhering to the stains. An examination and autopsy performed upon the body by Dr. Joseph Jachimcxyk, a pathologist in the Medical Examiner's office of Harris County, revealed three head wounds and skull fractures which the doctor testified could have been made with a blunt instrument and were the cause of the death of the deceased.

Following the finding of the deceased's body the appellant and Clifford Barnes were both charged with the murder and on June 10, 1958, warrants were issued by Justice of the Peace W. C. Ragan for their arrest. On June 11, 1958, a warrant was issued by the United States Commissioner for the Southern District of Texas for the arrest of appellant and Clifford Barnes commanding their arrest to answer a complaint charging them with fleeing from the State of Texas to the State of Louisiana to avoid prosecution for the crime of murder.

On June 18, 1958, the dead body of Clifford Barnes was found lying in a wooded area on a levee road in Fort Bend County several miles distant from the town of Sugarland. When found, the body was wrapped in a blanket and in a badly decomposed condition. Also found near the body was an automobile lug wrench, a woman's bathing suit, a pair of woman's pants and several towels. An examination of the body by Dr. Jachimczyk revealed two fractures of the skull and of the right jaw which the doctor testified could have been inflicted by the lug wrench. The opinion was expressed by Dr. Jachimczyk that the cause of death of the deceased, Clifford Barnes, was a fractured skull from blows to the head.

On June 20, 1958, the appellant was arrested by Constable N. D. Crawford of the Royal Canadian Mounted Police as he was changing a tire on his automobile on a highway in the

vicinity of Muniack, New Brunswick, Canada. The policeman testified that prior to his arresting the appellant he had received information through a broadcast from his police headquarters that a warrant was held by the F.B.I. at Houston, Texas, for the arrest of Howard B. Stickney and Clifford Barnes for murder and that the automobile in which appellant was traveling and license number fit the description of the automobile and license number given in the broadcast in which appellant and Barnes were supposed to be traveling. Policeman Crawford testified that after arresting the appellant he could smell the odor of human blood in the trunk of the car; that there was no wheel wrench in the trunk and that he ascertained that appellant was changing the tire with a tire tool which belonged to a farmer who lived nearby. The testimony further shows that in the search of the automobile some 26 items were taken therefrom and introduced in evidence by the state which included some particles of sand and reddish brown substance found in the trunk of the automobile.

Appellant was returned to Texas and on June 25, 1958, made and signed a written statement to Lt. W. C. Doss of the Houston Police Department in which he confessed to the murders of both the deceaseds, Shirley and Clifford Barnes.

In his confession which was introduced in evidence by the State appellant stated that on Saturday, May 24th, in company with the deceaseds, Shirley and Clifford Barnes, he went to Galveston in his automobile; that Shirley and Clifford wore bathing suits and when they arrived they drove to West Beach; that after dark he and Clifford laid on the ground to sleep and Shirley remained in the automobile; that after Clifford turned over to go to sleep, appellant got up, went to the automobile, got a blanket and lug wrench and returned to where they were sleeping; that he had been thinking of how Clifford treated his wife and he then took the lug wrench and began hitting him; that Shirley then came out of the car and he "swung at her twice or three times." Appellant stated that he then took Shirley to the water where he held her under the water; that he then took off her clothes and returned to the car where he laid her on the back floor board and covered her with a blanket; that he then picked up Clifford, rolled him in a blanket and put him and the lug wrench in the trunk of the car and proceeded to drive to the couple's apartment in Houston. Appellant further related how, when he arrived at the apartment in Houston he took Shirley inside, laid her on the bed, and after he had undressed and placed a pillow over her head he got on the bed and

had sexual intercourse. Appellant stated that he then drove to his home and decided to give himself up and that he called a newspaper reporter by the name of Walter Manswell and told him that he wanted to confess to a double murder and a rape and made arrangements to call him the next evening; that the next day he got up and drove around town until he left town and drove to Missouri City where he drove some three or four miles down the road where he stopped, got out, opened the trunk and took out the body of Clifford Barnes and threw it in some bushes, together with the lug wrench and some clothes. Appellant finally related how he drove back to Houston, picked up some clothes, then traveled to Louisiana, Minnesota and then to Canada where he was arrested by the Canadian Police.

It was further shown by the state's testimony that the public hairs found on the sheet under the body of the deceased, Shirley Barnes, had identical characteristics with pubic hairs of the appellant and that the sand removed from the trunk of appellant's automobile and from the ladies bathing suit found near the body of Clifford Barnes had identical characteristics with a sample of sand obtained on Galveston Beach. It was further shown that the blood stains on the lug wrench found near the body of Clifford Barnes were group "O" which was the same blood group as that of the deceased, Shirley Barnes. An examination of blood stains found in appellant's automobile disclosed that it was of human blood of both groups "A" and "O".

Appellant did not testify but called as witnesses in his behalf, Mr. and Mrs. Jack Pullian, who testified in substance that they lived near the apartment occupied by the deceaseds, Shirley and Clifford Barnes, and that on the night of May 24, 1958, at around 9.30 P.M. they saw the deceased, Shirley Barnes and a man go into the Barnes apartment on Ruth Street in the city of Houston. Other witnesses were called by appellant who gave testimony which need not be summarized.

We shall discuss the contentions urged by appellant in his brief and oral argument.

Appellant complains of the court's action in admitting evidence of the search of appellant's automobile by the officers in Canada and of the fruits thereof over the objection that the search was the result of an illegal arrest and without a search warrant. The testimony of Constable Crawford, the arresting officer, clearly shows that he had received information, which he considered reliable, that a felony had been committed in Texas

and that the accused was escaping in a certain described automobile. This information and the fact that appellant's automobile fitted the description of the automobile in which the accused were reported to be traveling was sufficient to authorize the appellant's arrest without a warrant under the provisions of Art. 215 of the Code of Criminal Procedure of this state which provides "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused. O.C.212." See Vaughn v. State, 134 Tex. Cr. R. 197, 113 S. W. 2d 895 and Ware v. State, 151 Tex. Cr. R. 228, 207 S. W. 2d 868. The arrest of appellant being lawful, the incident search of his automobile was authorized. Hodge v. State, 107 Tex. Cr. R. 579, 298 S. W. 573; Aaron v. State, 163 Tex. Cr. R. 635, 296 S. W. 2d 264 and King v. State, 166 Tex. Cr. R. 231, 312 S. W. 2d 501.

Complaint is made to the court's action in permitting the state to show on re-direct examination of the witness Lt. Doss, that following appellant's arrest and return to Texas he accompanied the officers to Sugarland, Texas, and directed them to a certain place where they went. Appellant objected to the testimony on the ground that it related to a statement made by him while under arrest. The record shows that on his cross examination of Lt. Doss, the appellant had inquired of him concerning the trip in question. The appellant, having offered evidence of the trip, authorized the state under the provisions of Art. 728, V.A.C.C.P. to show as a part of the transaction that appellant directed the officers on the trip. See 1 Branch's Ann. P. C. 2nd. Ed. sec. 115 and cases there cited. For the same reason the court did not err in permitting the appellant's witness, Dr. C. A. Dwyer, on his cross examination by state's counsel to relate part of a conversation he had with appellant in which appellant detailed how he committed the crimes as he had testified on direct examination by appellant's counsel with reference to a part of the same conversation.

We find no error in the action of the court in permitting the state's witness, Walter Manswell, a newspaper reporter, to testify, over appellant's objection of hearsay, that in the early morning hours of May 25th, he received a telephone call from an unidentified person who told him that he wanted to report a double murder and a rape and wanted to give himself up. This testimony was in corroboration of that portion of appel-

lant's confession in which he stated that he did make such a call to the newspaper reporter. The testimony as to the telephone conversation was admissible as original evidence to show that in fact the telephone call was made, and not to show the truth or falsity of the statements made therein, and was not subject to the objection of hearsay. 1 Branch's Ann. P. C. 2nd. Ed. sec. 130, pages 141 and 142.

We also find no error in the court's refusal to grant appellant's application for leave to file a second amended motion for new trial based upon newly discovered evidence.

The record reflects that the jury's verdict was returned into court on January 29, 1959, and on such date the court entered judgment thereon. On February 5, 1959, appellant filed his original motion for new trial which was set for hearing on April 15, 1959. On April 15, 1959, both the original and amended motion for new trial which were filed with leave of the court were by the court overruled and notice of appeal given by the appellant. This was during the February term, 1959, of the court and it was not until June 11, 1959, which was during the May term, 1959, that appellant presented to the court his application to file the second amended motion for new trial. Art. 828, V.A.C.C.P., provides in part that "The effect of an appeal is to suspend and arrest all further proceedings in the case in the court in which the conviction was had, until the judgment of the appellate court is received by the court from which the appeal was taken. In cases where, after notice of appeal has been given, the record of any portion thereof, is lost or destroyed, it may be subtituted in the lower court * * * ." Under the provisions of the statute, when appellant gave notice of appeal the trial court lost jurisdiction to do anything other than to substitute lost or destroyed records. Navarro v. State, 141 Tex. Cr. R. 196, 147 S. W. 2d 1081. While the appellant could have requested, during the term in which the judgment was rendered, that his notice of appeal be withdrawn, the record does not reflect that appellant made any request to withdraw the notice of appeal. Under the record presented the court was without jurisdiction to grant appellant leave to file the amended motion for new trial; hence no error is shown. Tores v. State, 74 Tex. Cr. R. 37, 166 S. W. 523; Francis v. State, 75 Tex. Cr. R. 362, 170 S. W. 779; Hensley v. State, 153 Tex. Cr. R. 616, 224 S. W. 2d 245 and Heath v. State, 161 Tex. Cr. R. 323, 276 S. W. 2d 534.

The record reflects that the appellant has been represented

by able court-appointed counsel in the trial court and by other able counsel in this court on appeal. Appellant has received a fair trial and the evidence amply supports the jury's verdict.

The judgment is affirmed.

Opinion approved by the Court.

ON MOTION FOR REHEARING

MORRISON, Presiding Judge.

It is appellant's principal position on rehearing that his confession was inadmissible as a matter of law. If this court is convinced that under the holdings of the Supreme Court of the United States a confession is inadmissible as a matter of law, we do not hesitate to so hold. Davis v. State, 165 Tex. Cr. Rep. 456, 308 S. W. 2d 880. Before discussing the cases upon which appellant relies, we deem it appropriate to call attention to certain facts not discussed in our original opinion.

Appellant was a laboratory technician for the Texas Highway Department. He was arrested in Canada in the late afternoon of June 20; that night he made a statement in writing concerning this offense, after having been given the statutory warning required by Canadian law. There is no proof in this record as to the laws of Canada, and this statement was not offered in evidence. The next morning, appellant waived extradition, and when the officers from Texas arrived in Canada at 10:00 P.M. on June 21 appellant was delivered to them. A newspaper reporter from Texas had preceded them and was at the jail in Canada when they arrived. Appellant was represented by an attorney while he was in Canada. Late in the afternoon of June 22, the Texas officers talked to appellant at the jail in Holton, Maine, where he had been placed the night before, and he made a statement in which he denied the killings. They then took appellant to the airport and flew to Texas. They were accompanied on this trip by one or more newspaper reporters from Texas who were covering the story. Early the next morning, the party was met at the Houston, Texas, airport by appellant's mother and his attorney, and appellant had a private conversation with both of them. He was then carried to the police department, where he had another private conversation with his mother and his attorney.

The body of Clifford Barnes had already been found in Fort Bend County, but the officers carried him to the vicinity "to see if he could show me where he threw the body." He was also shown some pictures of the body of the woman who had been killed. From this we conclude that the officers were attempting to determine whether they had the actual culprit or a mental defective who had read about a spectacular case in the newspapers and insisted that he committed the crime. They were met at the scene by the local justice of the peace. They then went to Galveston "to see if he was telling the truth about what happened in Galveston," and then returned to Houston by the middle of the afternoon. They were accompanied on this trip by Dr. Dwyer, the county psychiatrist, who was seeking to determine "whether or not he was a person of sound or unsound mind," and they met a number of newspaper and television reporters during the course of their journey.

Appellant was not shown to have been questioned any more that day. The following morning, appellant again conferred with his mother.

Late in the afternoon of the following day, appellant told the officer to whom he had made the statement in Holton, Maine, that he wanted to make another statement. The officer called appellant's attorney, who came to the jail, conferred privately with appellant, and then later in the evening the statement which was introduced in evidence was dictated by appellant to Mrs. Fisher, an employee at the courthouse, who transcribed the same and brought it back for appellant's signature, following which appellant was interviewed by the newspaper and television reporters and was then placed back in jail. The following day, the court entered an order granting appellant's then attorney leave to withdraw from the case.

With these facts as a background, we will attempt to distinguish the case at bar from those upon which appellant relies.

In Brown v. State of Mississippi, 297 U.S. 278, 80 L. ed. 682, 56 S.Ct. 461, counsel was appointed to defend Brown and his co-indictee one day, and the trial was held the following day. In the case at bar, appellant was indicted on June 26, 1958; a motion to quash the indictment was filed in September by the two able lawyers who defended appellant, and he was tried in January, 1959. In Brown, there was evidence of physical brutality. In the case at bar, there was none. In Brown, the

accuseds were illiterate members of the Negro race. In this case, appellant, a white man, was shown to have the equivalent of a high school education and was employed by the state in what appeared to have been a responsible position.

In Chambers v. State of Florida, 309 U.S. 227, 84 L. ed. 716, 60 S.Ct. 472, the accuseds were held a week and not permitted to confer with counsel or friend. In the case at bar, appellant was represented by counsel in Canada, was met by his mother and counsel of her own choosing at the airport when they arrived in Texas, and conferred with them privately on more than one occasion prior to making the confession.

In Ashcraft v. State of Tennessee, 322 U.S. 143, 88 L. ed. 1192, 64 S.Ct. 921, Ashcraft was held incommunicado and questioned continuously in relays for 36 hours. As stated above, appellant conferred privately with his attorney just a few hours before he signed the confession.

In Haley v. State of Ohio, 332 U.S. 596, 92 L. ed. 224, 68 S.Ct. 302, Haley was a 15-year-old Negro, while in the case at bar appellant had served a full term of enlistment in the Army, was 5′ 11″ in height, and weighted 180 pounds.

In Leyra v. Denno, 347 U.S. 556, 98 L.ed. 948, 74 S.Ct. 716, the confession which was introduced was taken very shortly after the taking of a prior confession which the state court had held inadmissible because induced by promises of leniency. The Supreme Court of the United States held both confessions were "parts of one continuous process" and were inadmissible because Leyra was physically exhausted and emotionally upset after attending his parents' funeral. We fail to see how it could be considered as authority here. The fact that Dr. Dwyer was present at the time the confession was made does not make this case controlling because appellant had already told Officer Doss that he wanted to make another statement some time before Dr. Dwyer arrived at the interrogation room.

In Fikes v. State of Alabama, 352 U.S. 191, 1 L. ed. 2d 246, 77 S.Ct. 553, Fikes was of sub-normal intelligence and was taken to the State prison, where he was held in solitary confinement; his father was not permitted to visit him, nor was his attorney. What we have heretofore said, we think, distinguishes the case at bar from Fikes.

In Payne v. State of Arkansas, 356 U.S. 2 L.ed 2d 975, 78 S.Ct. 844, Payne, an illiterate Negro, was held incommunicado for two days while he was being questioned; members of his family who came to see him were turned away. Payne asked to use the telephone, but permission was refused; he was not fed and was threatened with mob violence. None of these elements appears in the case at bar.

In Spano v. People of the State of New York, 360 U.S. 315, 3 L.ed. 2d 1265, 79 S.Ct. 1202, Spano, after being indicted, was denied permission to see his attorney, was moved from place to place, and through deceit a member of the police force who had been a long standing friend of Spano's played upon the prisoner's sympathy and induced him to confess. No such facts are before us here.

In Blackburn v. State of Alabama, 361 U.S. 199, 4 L.ed. 2d 242, 80 S.Ct. 274, Blackburn had a long history of mental illness, plus amnesia, and testified that he remembered nothing about the confession. The defense of insanity was not interposed in the case at bar.

While we have discussed the facts in the cases cited only briefly, we have concluded that the statement of the facts in the case before us here clearly demonstrates that none of the authorites relied upon is here controlling.

The other contentions raised were properly disposed of on original submission.

Believing as we do that the confession here is not inadmissible as a matter of law, appellant's motion for rehearing is overruled.