Calvin SELLARS, Appellant,

v.

The STATE of Texas, Appellee.
No. 38620.

Court of Criminal Appeals of Texas.

Dec. 8, 1965.

Rehearing Denied Feb. 23, 1966.

Second Motion for Rehearing Denied March 30, 1966.

Howard O. Lake, Rex Emerson, Court-appointed attorneys, S. John Odom (on rehearing only), Houston, for appellant.

Frank Briscoe, Dist. Atty., Samuel H. Robertson, Jr., Carl E. F. Dally, Gus J. Zgourides and Jimmy James, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is robbery with firearms; the punishment, death.

The appellant was jointly indicted with Sam Hoover, John Oscar Young, and Samuel Spivey. A severance was granted, and appellant was tried alone in this case. The defendant, Sam Hoover, was convicted on the second count of the same indictment as an accomplice to robbery with firearms, and was given a term of sixty years confinement in the Texas Department of Corrections. His case was affirmed by this Court in Hoover v. State, Tex.Cr.App., 390 S.W.2d 758. John Oscar Young's case [Ex parte Young, Tex.Cr.App., 397 S.W.2d 74] is currently on appeal before this Court.

The record is voluminous, but the evidence regarding the robbery is substantially the same as that in the Hoover case. However, it is necessary for us to here recite it in detail because of some testimony by different witnesses and because different contentions are made in the two cases, and the two convictions were upon different counts of the indictment.

On the evening of the day named in the indictment, three masked men descended on the Schepps' home on Memorial Drive in Houston. Outside the home they accosted Mrs. Tuck, an elderly governess employed by the Schepps, and knocked her unconscious. Two of the robbers, armed with a

pistol and sawed-off shotgun, went into the main house to subdue Mr. and Mrs. Schepps and the third brought Mrs. Tuck into the house shortly thereafter. For some three hours Mr. and Mrs. Schepps and Mrs. Tuck were confined to a bedroom on the second floor of the Schepps home by the three intruders. The Schepps' ten-month old infant was threatened, and a shot fired into the baby bed where the child lay. All three victims were bound, gagged and repeatedly struck and kicked. The masked men were in search of a large sum of money they believed to be on the premises, and set about to compel Mrs. Schepps to reveal its whereabouts. Mrs. Schepps was burned with a red-hot butcher knife across her upper abdomen; she was burned with cigars and cigarettes on her face and various parts of her body; an electric lamp cord was torn from the lamp, plugged into the wall, and she was repeatedly shocked with the loose end on her teeth, breast and private parts; as a result of a blow to her face, her jaw was broken and some of her teeth knocked out; a fireplace poker and one of the pistols were placed in her vagina; as the robbers were leaving, one of them, with no provocation whatever, shot her in the thigh with a .44 magnum pistol as she lay prostrate on the floor. She was taken to a hospital in a semi-conscious condition and remained there for sixteen days. Mr. Schepps was hospitalized for a like period of time as a result of broken ribs, a serious head and eye wound and other injuries. Mrs. Tuck's physical injuries were not so serious, and she remained in the hospital a shorter period of time.

In the course of the robbery, some $3,900 in money, a man's ring containing a round-cut diamond, a woman's necklace with an emerald-cut diamond, and various other articles of jewelry were taken from the Schepps' home. The stone in the diamond ring weighed 4.83 carats; the one in the necklace, 2.70 carats. State's witness, Mrs. Marjorie Gibson, testified that she found articles of clothing in a garbage can in front of her home, some 15 blocks from

the home of this appellant, on the morning following the robbery. The articles included a pair of man's slacks, a black shirt, a hat, a pair of gloves and rolls of adhesive tape. An examination of them revealed fibers identical with the carpet from the Schepps' home, a human hair found to be identical with that later removed from appellant, and traces of human blood of the same type as Mr. Schepps' blood.

The officers who recovered the articles of clothing recognized the trousers as similar to the ones they had seen appellant, Sellars, have on during a previous arrest.

On the afternoon of March 17th, after leaving the place where he worked, the appellant was arrested by two detectives of the Houston Police Department. The arrest occurred at approximately 4:00 p. m. The appellant, thereafter, made a written statement, confessing to his participation in the crime and implicating John Young and Samuel Spivey. This written statement was completed at approximately 10:00 p. m. on the 17th day of March, 1964. The statement was not signed at this time but officers, accompanied by the appellant, went to a place along the Gulf Freeway where the appellant had said that items taken in the robbery had been thrown. At approximately midnight on the same day, the appellant was taken to police headquarters where he signed the written confession he had already made. In the statement which he made, appellant related in detail some of the incidents that took place during the robbery, including his participation in the torture of the victims of the robbery and his taking of a portion of the money and jewelry obtained in the robbery. .

The evidence in this record also showed that spent bullets recovered from the victim's home had been fired from a gun which had been in the possession of John Oscar Young a short time after the robbery, which he had given to another party.

It was further shown that after the search of the co-defendant Sam Hoover's home, certain loose diamonds were recov-

ered which were identified by the victim, and by the jewelers who had mounted them for the victim, as being those owned by the Schepps.

Another witness testified that he was in the office of Sam Hoover on March 12th; that the co-defendant John Oscar Young was there; that after Young had left, Hoover showed the witness a man's ring containing a large diamond. Hoover also showed the witness a woman's brooch or pin. The defendant Hoover gave this witness and his mother and family money to leave the State, and they did leave the State and were brought back only after diligent search by investigators who found them in Kentucky.

The record reflects that witnesses saw a car, of similar model and color to that belonging to appellant, parked close to the Schepps' residence at the time of the robbery.

A Houston Police Officer, C. V. Stone, testified that as a result of a conversation with Calvin Sellars on March 20th, he went to the home of the appellant's mother; that the appellant helped him recover property and helped make an itemized list of some of the property taken in the robbery. The property consisted of a watch, several pairs of cuff links, and other jewelry. The appellant told the officer, in the same conversation in which he told him where the fruits of the crime could be recovered, that he, John Oscar Young, and Samuel Spivey had been involved in the robbery; that they went to the scene of the robbery in the appellant's automobile, and further related to him some of the atrocities that had been committed upon the victims of the robbery. The appellant also related to the officer that Sam Hoover had sent them to the scene of the robbery and that while they were there, they received instructions from him.

The appellant took the stand and testified in his own behalf, denying any participation in the robbery, and testified that his confession was the result of coercion and duress.

The mother of the appellant testified that on the night that the robbery was committed, her son was present in her home with his wife and two babies.

Steve Young, who was also present at the mother's house, testified that the appellant was there during the time he was present, which was from about 7:00 p. m. until 8:45 p. m.

The younger brother of the appellant, Lucky Sellars, also testified that Calvin was at his mother's residence on the night in question.

■ The evidence is amply sufficient to support the jury's verdict.

There were no formal bills of exception brought forward in the record, and there were no objections to the Court's charge. No requested charges were presented to the Court.

We shall discuss appellant's various contentions of error in the order that he urges them in his brief.

First, appellant contends that his written confession was inadmissible as a matter of law. He says that it was not admissible upon four grounds; namely, (1) it was involuntary; (2) that it was the "fruit" of an unlawful arrest under the 4th and 14th amendments of the United States Constitution; (3) that it was taken at a time when he was without counsel in violation of the 6th and 14th amendments to the United States Constitution. He here relies upon Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and other cases cited by him; (4) that a proper predicate had not been laid for the introduction of the written confession under Art. 727, Vernon's Ann.C.C.P.

■ The examination out of the presence of the jury, on the voluntary nature of the confession, consumed some 350 pages of the lengthy statement of facts. At the

conclusion of this examination, the trial judge held the confession admissible as a matter of law, finding that it was freely and voluntarily given. The careful trial judge entered an order and findings of facts on the separate hearing on the issue of the voluntary nature of the confession, in which the Court found the confession to have been voluntarily made. We find no error in the action of the trial court in admitting the confession and finding it to be admissible as a matter of law and that it was freely and voluntarily given. The appellant also testified and produced the same evidence in the presence of the jury, as to his version that the confession had been coerced and involuntarily made. The state again rebutted this testimony by witnesses, as it had done out of the presence of the jury. Under proper instructions the jury resolved the issue against the appellant. We find no merit in his two contentions numbered (1) and (4) above.

█ It is apparent to us, from the record, that the officers who arrested the appellant had credible information that the Schepps robbery had been committed and evidence that led them to believe the appellant was implicated in it. It is further reflected from the record that these officers also were aware that a warrant had been issued for the arrest of the appellant as a parole violator; they knew that appellant's wife had information that the officers were looking for appellant, and they felt that he might flee. The testimony shows that they did not have time to obtain, and could not obtain, the warrant which had been issued before his arrest. We hold that the arrest under these circumstances was a legal arrest. We held in Pennington v. State, Tex.Cr.App., 364 S.W.2d 376, under a similar set of facts to those in this case that the officers were authorized by statute to there arrest persons wanted for robbery without a warrant. We also held in Stickney v. State, 169 Tex.Cr.R. 533, 336 S.W. 2d 133, certiorari denied, 363 U.S. 807, 80 S.Ct. 1245, 4 L.Ed.2d 1151, that the facts there adduced were sufficient to authorize

an arrest without a warrant under the provisions of Art. 215, V.A.C.C.P. Without unduly extending the length of this opinion, we feel that the fact that a warrant had been issued for the arrest of appellant as a parole violator by the officers who had knowledge that the warrant had been issued, would remove any doubt as to the lawfulness of appellant's arrest. However, we remain convinced that no warrant was necessary under the facts and conditions of this case. Accordingly, appellant's foregoing contention (2) is overruled and is without merit.

█ We see no merit in appellant's foregoing contention, numbered (3) above. Under the facts, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, is not applicable. Appellant did not request counsel. He was not denied the right to assistance of counsel. He was warned that he did not have to make any statement. Hinkley v. State, Tex.Cr.App., 389 S.W. 2d 667. Also, see Corry v. State, Tex.Cr. App., 390 S.W.2d 763, and Miller v. State, Tex.Cr.App., 387 S.W.2d 401.

█ Appellant further complains of the action of the trial court in admitting into evidence State's Exhibit #8, consisting of a jar of miscellaneous jewelry, and also of the court's action in admitting into evidence the oral confession of appellant, admitting participation in the offense and leading officers to the alleged "fruits of the crime" on the grounds that the Exhibit was not shown to have been taken in the robbery. Officer Stone testified that he recovered these items at the direction of appellant and his oral confession of the offense. We find no merit in this contention and it is overruled.

█ Finally, appellant contends that the trial court erred in not permitting him to show that the co-defendant, Samuel Spivey, had been granted immunity, and that the case against him had been dismissed. We find nothing in this record reflecting any testimony being adduced from Samuel Spiv-

ey. Spivey testified in the Sam Hoover case, but not in this one. The disposition of the case against Spivey was immaterial as to this appellant.

Finding no reversible error, the judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

DICE, Commissioner.

██ Appellant insists that we were in error in overruling his contention that a proper predicate had not been laid for the introduction of his written confession in evidence, under Art. 727, V.A.C.C.P., because the record does not show that he was duly warned before signing the statement.

We have again examined the record in the light of such contention and find that Officer J. E. Hodges, the person to whom the confession was made, testified positively that before he took the statement from appellant (state's exhibit #30), which was reduced to writing and signed by him, he gave appellant the legal warning printed therein. The contention is again overruled.

We also remain convinced, as stated in our original opinion, that Escobedo v. Illinois, supra, is not applicable under the facts.

Appellant further insists that we were in error in upholding the legality of his arrest and relies upon certain relatively recent federal cases, including Collins v. Beto, 348 F.2d 823 (5th Cir., 1965).

 The fact that a warrant had been issued for appellant's arrest as a parole violator distinguishes the case from those cited. Under the facts and circumstances shown, appellant's arrest was lawful.

The contentions are also made by appellant that his conviction should be reversed because his constitutional right to counsel was violated and evidence was suppressed by the district attorney's office.

While the record reflects that certain restrictions were imposed with reference to attorneys seeing appellant in jail, there is no showing that he was denied the right to see an attorney of his choice. The record does not support the contention that evidence was suppressed by the district attorney or any member of his staff. The contentions are overruled.

Remaining convinced that a proper disposition was made of the case on original submission, the motion for rehearing is overruled.

Opinion approved by the court.