**Melvin Lee DIXON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 38869.**

Court of Criminal Appeals of Texas.

Jan. 5, 1966.

M. S. Morgan, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and Carol S. Vance, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is murder; the punishment, death.

The state's evidence shows that the deceased, Marion Harlow, owned and operated Bubba's Grocery Store at 2219 Chenevert Street in the city of Houston. On the morning of March 26, 1964, the deceased was seen running from the store, around 10 a. m., in pursuit of a man who was shown by the evidence to be the appellant. While being pursued, appellant fired several shots with a .22 calibre pistol, one of the bullets striking the deceased in the chest and causing his death. After emptying the pistol, appellant fled from the scene, leaving the deceased lying face down on the sidewalk in front of another grocery store.

Later in the day, Officer H. M. Gray went to an address on Jackson Street, around 3 p. m., where Millie Johnson lived. When he arrived, Millie was sitting in an automobile, parked in a driveway, with a man by the name of Young. After she had invited Officer Gray inside the house, they went inside and she unlocked the door to the bedroom which she occupied. When they entered the bedroom, Officer Gray observed the appellant in a bed with the cover pulled up over him. After the officer asked appellant his name and he told him, appellant got out of the bed and, except for his shoes, was fully dressed. Officer Gray then observed a chair with the cushion raised, with something under the cushion which appeared to be a pistol. He proceeded to take from under the cushion a .25 automatic Browning pistol which the proof showed was a pistol that belonged to the deceased.

Appellant was thereupon arrested by Officer Gray and taken to the homicide office of the Houston police department.

Shortly after midnight, Detective I. W. Holmes went with the appellant and Millie Johnson to her residence on Jackson Street and from there to a house at 1830 Palm Street, then back to Millie's house and returned to the homicide office at approximately 2 a. m. While at Millie's house the detective found in a wastepaper basket, as the result of information furnished by appellant, six .22 calibre empty shells which appellant stated he had removed from the gun with which he had shot the man (deceased) at the grocery store. At 1830 Palm, the detective found under the house a .22 calibre pistol which appellant stated he had used to shoot the deceased. Some money ($16 in quarters and halves) and three watches were also found which appellant stated he had taken from the deceased when he robbed him at the grocery store. It was shown that the deceased had several watches at his store and one of the three watches recovered under the house was identified by his mother as belonging to him. It was further shown that a .22 calibre bullet recovered from the deceased's body had been fired from the .22 calibre pistol found under the house on Palm Street, which appellant stated was the gun with which he shot the deceased.

At 2 a. m., appellant was returned to the homicide office and, after being duly warned by Detective J. L. Marquis, began making a written statement which was completed and signed by him at 4 a. m.

The statement was offered in evidence as state's exhibit #20 but before it was admitted by the court a hearing was held in the absence of the jury on the question of its admissibility. In the hearing before the court in the jury's absence, Detective Marquis testified that before the statement was made he gave appellant the statutory warning and that appellant was not threatened or intimidated in any way. He stated that appellant did not appear to be frightened when making the statement but appeared to be normal. The officer further testified that no request was made by appellant to consult with an attorney and nothing was said about his appearing before a magistrate.

Appellant did not testify or call any witnesses to testify on the issue.

At the conclusion of the hearing, the court made an independent finding, duly entered of record, that the confession was voluntarily made after due warning, and admitted the same in evidence over appellant's objection that " * * * he was not taken before a magistrate * * * that he wasn't given the opportunity to have an attorney * * * [and] * * * that it was taken under duress * * *."

The court further found that at the time of signing the confession appellant did not request a lawyer or seek the advice of counsel in any way. The question as to the voluntary nature of the confession was not submitted to the jury and no request was made by appellant that such an issue be submitted.

In the statement, appellant related that on the morning of the killing, he and two companions, Hubert Young and a boy by the name of Raymond, decided to rob the man at Bubba's Grocery Store. It was agreed that appellant would go in the store because the deceased knew Hubert and Raymond. The three went to Millie Johnson's and when they left to go to the grocery store appellant took with him the .22 calibre pistol. They arrived at the store around 8 a. m. and parked about a half block away so they could watch the store. After watching the store for some time, they returned to Millie's house and changed cars. At 9 a. m., they drove back to the store and parked where they could watch people come in and out of the store. Raymond and another man by the name of Roy, who had joined them, made trips in the store and, finally, Raymond returned and said there was just one person in the store. Appellant stated that they then drove around the block and let him off at a corner. He went in the store and no one was inside except the deceased. He then pointed

the pistol at the deceased and told him to open the cash register and give him the money. The deceased opened the register and appellant took the money. Appellant then locked the front door and made the deceased go to his living quarters in the rear. Appellant then searched the deceased, took a gun from his pocket, and also took three watches lying on a table. Appellant stated that at this time he heard someone at the front door and he pushed the deceased down on a bed and ran out the back door. He further related that after he ran out of the store he looked back and saw the deceased chasing him and when the deceased said "stop," appellant started shooting, "shot six times." Appellant stated that he ran to Millie's house and put the gun he had taken from the deceased under a cushion in the chair. He then took the fired hulls out of the .22 pistol, put them in the trash can, and put the pistol in a chest of drawers. The money taken in the robbery, which amounted to $36, was counted. Appellant and Hubert took $10 each, and Hubert then took the remaining $16 and the watches and put them in an envelope, which he hid in the bathroom. Appellant admitted that the gun taken in the robbery was found by the officers in the room and that he showed them the six empty hulls in the garbage can. He further stated that the .22 calibre pistol, the money, and the watches found at the Palm Street address had been taken there by his companion Roy, after the shooting.

Appellant did not testify or call any witnesses in his behalf.

■ The evidence shows the ruthless killing of the deceased and is amply sufficient to sustain the jury's verdict.

Appellant predicates his appeal upon the contention that the evidence introduced against him was illegally obtained by the officers and was therefore inadmissible under the provisions of Art. 727a, Vernon's Ann.C.C.P. In support of such contention, he insists that his arrest without a warrant was unlawful and the subsequent search of the premises without a search warrant was illegal. He also contends that his rights were violated because he was not taken before a magistrate or given the privilege of obtaining an attorney.

■ We have carefully examined the record in the light of such contentions and perceive no reversible error. The evidence is undisputed that the officers' entry into Millie Johnson's room was upon her invitation. They were not trespassers on the premises. The pistol found by Officer Gray was seen under the cushion and was not recovered as the result of a search. It was introduced in evidence without objection. While Officer Gray was not questioned with reference to whether he arrested appellant without a warrant, the arrest, if without a warrant, was, under the facts, authorized. Art. 215, V.A.C.C.P.; Stickney v. State, 169 Tex.Cr.R. 533, 336 S.W.2d 133; Edmond v. State, 169 Tex. Cr.R. 637, 336 S.W.2d 946. The oral statements made by appellant, while under arrest, which led to the finding of the fruits of the crime and the implement with which appellant stated the crime was committed, were admissible as an oral confession under the provisions of Art. 727, V.A.C.C.P.; Edmond v. State, supra; Bingham v. State, 163 Tex.Cr.R. 352, 290 S.W.2d 915. Although the record does not affirmatively show that appellant was not taken before a magistrate, if in fact he was not, his confession would not be inadmissible in the absence of a showing of some causal connection between the delay and the making of the confession. Creswell v. State, Tex. Cr.App., 387 S.W.2d 887. There is no such showing in the present case.

■ The record affirmatively shows that no request was made by appellant to consult a lawyer prior to the making of his confession. This fact distinguishes the case from Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. See: Corry v. State, Tex.Cr.App., 390 S.W.2d 763; Miller v. State, Tex.Cr.App., 387 S.W.2d 401.

**458**

The cases cited by appellant have been carefully considered and are not here controlling, under the facts. Santos v. State, Tex.Cr.App., 389 S.W.2d 465, involved a defective search warrant. Robertson v. State, Tex.Cr.App., 375 S.W.2d 457, involved a search made by the officers after they had entered the accused's apartment, upon his invitation, for the purpose of talking to him. In Barnes v. State, Tex.Cr. App., 390 S.W.2d 266, the search was incident to an arrest under an invalid warrant.

The judgment is affirmed.

Opinion approved by the Court.